Katrina Yvette Becker, appellant, v.
Kurt Daniel Becker, appellee.
___ N.W.2d ___

Filed June 25, 2013.    No. A-12-814.

1.  **Divorce: Alimony: Appeal and Error.** In an action for dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination of alimony; a determination regarding alimony, however, is initially entrusted to the trial court's discretion and will normally be affirmed in the absence of an abuse of that discretion.
2.  **Judges: Words and Phrases.** A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result.
3.  **Alimony.** In addition to the criteria listed in Neb. Rev. Stat. § 42-365 (Reissue 2008), in considering alimony upon a dissolution of marriage, a trial court is to consider the income and earning capacity of each party, as well as the general equities of each situation.
4.  ____. In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness.
5.  ____. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate.
6.  ____. Disparity in income or potential income may partially justify an award of alimony.
7.  **Alimony: Appeal and Error.** In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result.
8.  **Alimony.** While need is certainly a factor in analyzing alimony, it is only one of several factors within a court's analysis.

Appeal from the District Court for Douglas County: Peter C. Bataillon, Judge. Affirmed.

Michael B. Lustgarten and Britt Carlson, Senior Certified Law Student, of Lustgarten & Roberts, P.C., L.L.O., for appellant.

Jamie E. Kinkaid, of Cordell & Cordell, P.C., for appellee.

Inbody, Chief Judge, and Irwin and Moore, Judges.

Irwin, Judge.

## I. INTRODUCTION

This case confronts the reality that increasingly unstable and fluid job markets may cause internal family roles to evolve and

change throughout the years. This case illustrates the legally articulated notion that alimony is gender neutral.

Katrina Yvette Becker appeals from a decree of dissolution entered by the district court, which decree dissolved her marriage to Kurt Daniel Becker; awarded alimony, child support, and attorney fees to Kurt; and divided the marital assets and debts. On appeal, Katrina asserts that the district court erred in awarding Kurt any alimony, given both parties' present and past financial circumstances. Upon our de novo review of the record, we find no abuse of discretion by the district court in its award of alimony to Kurt. Accordingly, we affirm the decision of the district court.

## II. BACKGROUND

Katrina and Kurt were married on January 20, 1990. Two children were born of the marriage; however, one of the children had reached the age of majority by the time of the dissolution proceedings. The parties have one remaining minor child, who was born in 1994.

On February 13, 2012, Katrina filed a complaint for dissolution of marriage. In the complaint, Katrina specifically asked that the parties' marriage be dissolved, that they be awarded joint custody of their minor child, and that their marital assets and debts be equitably divided. On March 2, Kurt filed an answer and a countercomplaint for dissolution of the marriage. In the countercomplaint, Kurt specifically asked that the parties' marriage be dissolved, that they be awarded joint custody of their minor child, that their marital assets and debts be equitably divided, and that he be awarded alimony and attorney fees.

On April 12, 2012, the district court entered a temporary order. Pending the dissolution trial, the court granted the parties joint legal and physical custody of their minor child. The court awarded Katrina the exclusive possession of the marital residence and ordered her to pay Kurt $1,000 per month in child support. The court denied Kurt's request for temporary alimony.

Trial was held on July 20, 2012. At trial, the parties indicated to the court that they had come to an agreement on

many issues. The remaining issues left for the court to decide included Katrina's child support obligation, Kurt's request for alimony and attorney fees, and whether an equalization payment was due to Kurt after the division of the parties' bank accounts.

The evidence presented by both parties at the trial focused on their past and present incomes and financial circumstances.

At the time of the trial, Katrina was 46 years old. She was employed at "TD Ameritrade" as the managing director of communications and public affairs. Katrina had been employed in that capacity since 2007. Her base salary was $175,000 per year, and she was eligible for bonuses. In fact, Katrina testified that she had earned a substantial bonus each year since 2008. Her total average income from 2008 through 2011 was $281,727. Her income in 2011 alone totaled $315,000.

Katrina testified that she had worked almost continuously throughout the duration of the parties' marriage. However, she indicated that prior to 2007, when she accepted her current position with TD Ameritrade, she had earned a much lower salary. Katrina also testified that early on in the parties' marriage, she was forced to interrupt her career on two separate occasions due to the family's having to relocate for Kurt's career.

At the time of the trial, Kurt was 48 years old. He was employed with "ConAgra Foods" as a research scientist and had been employed in that capacity for 2 or 3 years prior to the trial. Kurt earned a salary of $84,000 per year.

Kurt testified that he had actually been employed with ConAgra Foods for a majority of the parties' marriage; however, his position within the company had changed. He had worked as a technical services manager for approximately 12 years. Then, in 2003 or 2004, this position was eliminated and he became unemployed. Kurt testified that he searched for new employment and was offered two different jobs at companies that were located "out of town." He turned down both opportunities due, in part, to Katrina's job and her ability to earn more income for the family. Kurt decided to return to ConAgra Foods after being unemployed for approximately 7 months. He

accepted an "entry" level job doing basic chemistry laboratory work and earned $60,000 a year. Since then, he has taken a wide variety of positions with ConAgra Foods, working toward his current position as a research scientist.

After the trial, the district court entered a decree of dissolution. The court divided the parties' marital assets and debts such that Katrina and Kurt each received one-half of the retirement accounts, the TD Ameritrade stock and stock options, and the proceeds of the sale of the marital home. In addition, the court awarded the parties the bank accounts in their own names and awarded Kurt, as a property settlement, an additional $5,500. The court ordered Katrina to pay Kurt child support in the amount of $904 per month and alimony in the amount of $2,000 per month for 84 months. Finally, the court ordered Katrina to pay $7,204 toward Kurt's attorney fees.

Katrina appeals from the district court's decree of dissolution.

## III. ASSIGNMENT OF ERROR

On appeal, Katrina challenges the district court's award of alimony to Kurt.

## IV. ANALYSIS

### 1. Standard of Review

[1,2] In an action for dissolution of marriage, an appellate court reviews de novo on the record the trial court's determination of alimony; a determination regarding alimony, however, is initially entrusted to the trial court's discretion and will normally be affirmed in the absence of an abuse of that discretion. *Smith v. Smith*, 20 Neb. App. 192, 823 N.W.2d 198 (2012). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Id*.

### 2. Alimony Award

In the decree, the district court ordered Katrina to pay Kurt alimony in the amount of $2,000 per month for a period of 84 months. Katrina argues that such an award was an abuse of discretion, because Kurt does not need alimony, for the reason

that his current monthly income exceeds his expenses; because her income has only significantly exceeded Kurt's income for the last few years; and because Kurt did not forgo any employment or educational opportunities during the marriage. Upon our de novo review of the record, we cannot say that the district court's award of alimony to Kurt was an abuse of discretion. Accordingly, we affirm.

Before we address Katrina's specific assertions, we detail the relevant statutory and case law which overlays a trial court's decision to award alimony. Neb. Rev. Stat. § 42-365 (Reissue 2008) provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

[3-6] In addition to the criteria listed in § 42-365, in considering alimony upon a dissolution of marriage, a trial court is to consider the income and earning capacity of each party, as well as the general equities of each situation. *Smith v. Smith, supra*. In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004). The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id*. Disparity in income or potential income may partially justify an award of alimony. *Id*.

[7] In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. See *id*.

Katrina and Kurt's marriage was one of long duration. The record reflects that they were married for approximately 22 years prior to separating and that they raised two children, one to the age of majority, during the marriage.

Evidence from the dissolution trial revealed that both parties made significant financial contributions to the marriage. Katrina and Kurt both worked full time throughout the marriage, with only minor interruptions to each party's career. In particular, we note that contrary to Katrina's assertion on appeal, there was evidence presented which demonstrated that both Katrina and Kurt forwent certain employment opportunities in an effort to give the other spouse's career priority. Ultimately, the evidence showed that as a result of the parties' joint efforts, they amassed significant assets during the course of their marriage. These assets were essentially divided evenly between the parties in the decree of dissolution.

In addition, the evidence revealed that both parties made significant contributions to raising their children and taking care of their home. Katrina testified that early on in the marriage, she was the children's primary caregiver and handled many of the day-to-day responsibilities because Kurt traveled a great deal for his job. Kurt testified that later on in the marriage, as Katrina's career flourished, he took on a larger role at home, becoming the primary caregiver for the children.

In the decree, the district court calculated Katrina's gross monthly income to be $23,601.08 and her net monthly income to be $14,249.12. Presumably, the court made this calculation utilizing Katrina's average annual income from the years 2009 through 2011. Katrina does not dispute the district court's calculation of her current monthly income.

At trial, Katrina offered an exhibit to demonstrate that her monthly expenses total close to $13,500. However, upon our review of this exhibit, it is clear that some of the items and amounts included in Katrina's monthly budget are speculative in nature and that many of her expenses are not for necessary or essential items. Upon our de novo review of all of the evidence presented at the dissolution trial, we conclude that it is clear that Katrina has a significant disposable monthly income.

The district court calculated Kurt's gross monthly income to be $7,076.75 and his net monthly income to be $4,826.76. Katrina does not dispute the court's calculation of Kurt's current monthly income. At trial, Kurt testified that his monthly expenses total approximately $3,600. As such, Kurt has approximately $1,225 in disposable income each month.

Clearly, there is a significant disparity in the parties' current incomes. Yet, this is not a situation where either party is struggling to pay his or her monthly expenses. Rather, both Katrina's and Kurt's monthly incomes exceed their monthly expenses.

In her brief to this court, Katrina urges us to focus on whether Kurt "needs" any additional income that would justify an award of alimony. She argues that Kurt does not need alimony to "bridge a period of unemployment or get proper training . . . since he is currently employed and his income exceeds his expenses." Brief for appellant at 11. In fact, at trial, Kurt did not testify that he "needed" alimony. Instead, he indicated that he believed that the additional income provided by an award of alimony would assist him in being able to live the same lifestyle he had become accustomed to during the marriage. In addition, he indicated that he wanted to use any alimony to be able to assist Katrina in paying for the children's educations and to financially support the children in their future endeavors.

[8] While need is certainly a factor in analyzing alimony, it is only one of several factors within our analysis. See *Titus v. Titus*, 19 Neb. App. 751, 811 N.W.2d 318 (2012). If we were to focus solely on the element of need, as suggested by Katrina, we would be ignoring several of the other factors relevant to an award of alimony. As we discussed more thoroughly above, such factors include the relative economic circumstances, the disparity in the parties' incomes and earning capacities, and the general equities of the case. See *Hosack v. Hosack*, 267 Neb. 934, 678 N.W.2d 746 (2004); *Smith v. Smith*, 20 Neb. App. 192, 823 N.W.2d 198 (2012).

After considering all of the factors involved in an award of alimony and the particular facts of this case, we cannot say that the district court's award of alimony to Kurt was an

abuse of discretion simply because Kurt does not "need" the additional income in order to pay his monthly expenses. It is clear from the evidence presented at the dissolution trial that Katrina earns significantly more money than Kurt and that she is more than capable of paying the award of alimony. Indeed, the award of $2,000 per month is less than 9 percent of Katrina's gross monthly income and less than 15 percent of her net monthly income.

Katrina also argues that the district court's award of alimony is an abuse of discretion because she has earned a significantly higher income than Kurt for only a few years and, prior to that time, they had earned similar incomes or Kurt had earned a higher income. Katrina's argument in this regard has no merit.

The evidence presented at the dissolution trial revealed that Katrina has earned a significantly higher income than Kurt since at least 2007, when she accepted her current position at TD Ameritrade. The evidence demonstrated that as Katrina's career progressed, Kurt struggled because his long-time position with ConAgra Foods was eliminated and he was forced to take a lower paying, less prestigious position with the company after a period of unemployment.

Despite the parties' economic histories, this evidence demonstrates that by the time of the dissolution trial, Katrina was flourishing in her career, earning a significant income, while Kurt was still working to improve his position with ConAgra Foods and to gradually increase his salary. Moreover, we note that the district court divided the parties' marital assets essentially in half so that both parties benefited equally from the other spouse's past incomes and economic circumstances. When we consider both parties' current economic circumstances, in addition to the division of the parties' marital assets, we cannot say that the district court abused its discretion in its award of alimony to Kurt.

Based on our de novo review of all of the evidence presented at the dissolution trial, we conclude that the district court's decision to award Kurt alimony in the amount of $2,000 per month for 84 months is not an abuse of discretion.

## V. CONCLUSION

We find no abuse of discretion in the alimony award. Accordingly, we affirm the decision of the district court to award Kurt alimony in the amount of $2,000 per month for a period of 84 months.

Affirmed.

---

Southwest Omaha Hospitality, L.P., appellant, v.
Gail Werner-Robertson et al., appellees.

___ N.W.2d ___

Filed June 25, 2013.   No. A-12-1008.

1. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.
2. **Actions: Parties: Final Orders: Appeal and Error.** With the enactment of Neb. Rev. Stat. § 25-1315(1) (Reissue 2008), one may bring an appeal pursuant to such section only when (1) multiple causes of action or multiple parties are present, (2) the court enters a final order as to one or more but fewer than all of the causes of action or parties, and (3) the trial court expressly directs the entry of such final order and expressly determines that there is no just reason for delay of an immediate appeal.
3. **Final Orders: Appeal and Error.** Certification of a final judgment must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Appeal dismissed.

Rodney K. Vincent and Darla J. Johnson, of Vincent Law Office, for appellant.

No appearance for appellees.

Irwin, Moore, and Pirtle, Judges.

Irwin, Judge.

## I. INTRODUCTION

This lawsuit began in June 2005. In a 2011 appeal to this court, we dismissed the appeal for the reason that no final,