Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/29/2016 09:07 AM CDT

Krista Marie Sellers, appellant and
cross-appellee, v. Ryan O. Sellers,
appellee and cross-appellant.

___ N.W.2d ___

Filed July 29, 2016.    No. S-15-618.

1.  **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2.  **Divorce: Property Division.** The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case.

3.  ____: ____. Under Neb. Rev. Stat. § 42-365 (Reissue 2008) the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

4.  ____: ____. Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance.

5.  ____: ____. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. If the separate property remains segregated or is traceable into its product, commingling does not occur.

Appeal from the District Court for Lincoln County: Richard A. Birch, Judge. Affirmed in part, and in part reversed and remanded with directions.

Patrick M. Heng, of Waite, McWha & Heng, for appellant.

Timothy P. Brouillette, of Brouillette, Dugan & Troshynski, P.C., L.L.O., for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, Stacy, and Kelch, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Krista Marie Sellers appeals, and Ryan O. Sellers cross-appeals, from the decree entered by the district court for Lincoln County dissolving their marriage. The issues on appeal relate to the court's determination of whether a cattle herd and certain other assets and debts associated therewith should be included in the marital estate and, consequently, whether the division of property was proper. We affirm in part and in part reverse, and remand with directions.

## STATEMENT OF FACTS

Krista and Ryan were first married in 2005. They divorced in 2008, but they reconciled soon thereafter, and they remarried on August 27, 2010. Krista filed a complaint to dissolve the marriage on April 9, 2014. Although the district court determined various issues concerning the dissolution, the issues raised on appeal relate solely to the property division involving certain assets and debts. Specifically, we are asked to assess whether a cattle operation, interests in three limited liability companies (LLCs), and a debt related to one of the LLCs should have been included in the marital estate. We therefore focus on the facts related to those issues.

*Cattle Operation.*

The court received into evidence a joint property statement showing the property possessed or owned and debts owed

by the parties at the time of dissolution and the respective value each party assigned to each item. Under the category of "Farm Business Equipment, Inventory, and Supplies," the list included, inter alia, cattle which the parties agreed were valued at over $600,000. In the decree of dissolution, the court found that the cattle were nonmarital property owned by Ryan prior to the marriage. The court stated:

> To the extent that there has been an increase in the value of the cattle, that increase resulted from the increase in the market value of cattle, and from the input of [Ryan's] inheritance of approximately $200,000. While [Krista] may have occasionally helped [Ryan] care for the cattle, such help was at most occasional and would not have resulted in any increase in the value of the livestock.

In his testimony at trial, Ryan acknowledged that around the time the parties remarried in August 2010, he owned cattle valued at approximately $130,000, and that at the time the parties separated, the value of the cattle had increased to over $600,000. He testified that he had used $104,000 of an inheritance to purchase additional cattle and approximately $75,000 of the inheritance had been used to pay back taxes. Ryan testified that the rest of the increase in the value of the cattle was because "the market for livestock ha[d] increased dramatically" in the last year. Ryan acknowledged, however, that he had bought and sold cattle throughout the duration of the marriage and that the cattle operation had been financed through an operating line of credit that was taken out in the names of both Ryan and Krista.

*Three LLCs.*

At the time the parties remarried in 2010, Ryan was the sole member of three LLCs: 5 Star Pawn, L.L.C.; Royal Colonial Inn, LLC; and Western Mobile Home Park, LLC. On August 27, 2010, the day the parties remarried, Ryan executed three documents; each document pertained solely to each of the LLCs. The three documents were received into evidence at trial. The documents were each titled "Assignment of Interest

in . . . by Gift" and stated (with the name of each of the respective LLCs inserted where indicated) that the assignment was by and between Ryan as "Transferor" and Ryan and Krista, as joint tenants with rights of survivorship, as "Transferee." However, elsewhere in the document, Ryan and Krista were referred to as "Transferees." The documents stated that "Transferor desires to assign to Transferee as a gift pursuant to [a provision of each of the LLCs' operating agreements], all of Transferor's 100% interest in . . . currently held by Transferor." The documents stated that Transferor "gifts, assigns, transfers, conveys, and delivers to Transferees" 100 percent interest as follows: 50 percent to "Ryan . . . as joint tenant with right of survivorship in Krista" and 50 percent to "Krista . . . as joint tenant with right of survivorship in Ryan."

After its consideration of the evidence in the decree of dissolution, the court made a finding that "[Ryan's] transfer to [Krista] of an interest in the LLCs was a gift from [Ryan] to [Krista.]" In reaching this finding, the court noted evidence that Krista had told Ryan that she "would not marry [Ryan] without the financial security that came from transfer of the property to her." The court also found that "[Ryan] signed the transfers after the marriage occurred. As such, the transfer was a gift made during the course of the marriage, and the interest transferred [to Krista] is included in the marital estate." The court further found that "when [Ryan] made the transfer to [Krista], he specifically transferred only 50 percent of his interest in the LLCs. The other 50 percent he retained for himself." Based on these findings, the court concluded that the 50-percent interests of the LLCs Ryan retained for himself were nonmarital property and were not subject to division but that the 50-percent interests transferred to Krista were marital property and were subject to division.

In dividing the marital assets, the court awarded the 50-percent interests in the LLCs that it had found to be marital property to Ryan. The court ordered Krista to assign Ryan all of her interests in the LLCs.

*Debts of LLCs and*
*Promissory Note.*

During his testimony at trial, Ryan offered, and the court received into evidence, an exhibit that included a promissory note dated December 31, 2008, in the amount of $200,000 which listed Ryan, individually and as the sole member of the Royal Colonial Inn, as the maker of the note and Gregory G. and Judy M. Gifford as the holders of the note. The exhibit also included an amortization table which, Ryan testified, reflected "the balance owed roughly on today's date" for the loan as set forth in the property list. We note that the property list includes a line for debt to "Judy and Greg Gifford- Royal Colonial" and that the column for Krista's valuation of the debt contains no entry, while the column for Ryan's valuation of the debt lists $110,000. We note further that the trial was held on February 19, 2015, and that the amortization table shows a "Balance of Principal" of $109,299.76 on February 1 and $107,802.84 on March 1.

During Ryan's cross-examination of Krista, he asked her whether she was aware of the debt owed to the Giffords in connection with the Royal Colonial Inn and whether she had any reason to dispute the balance of the debt. Krista indicated she was aware of the debt and had no reason to dispute the balance. In connection with the debt to the Giffords, in her reply brief, Krista acknowledges the debt and indicates that the debt is being serviced by the income of the LLCs.

In the decree of dissolution, the district court stated that Ryan was "not entitled to a deduction from the marital estate for the debt" to the Giffords. The court further found that "[b]ecause only one-half of the LLCs is a marital asset, for purposes of property equalization" only one-half of the other debts associated with the LLCs should be considered as marital debt.

*Division of Property.*

Based on its findings, the court thereafter totaled the values of all the marital assets awarded and marital debts assigned

to each of the parties and divided the property. Such division did not include the cattle operation or the 50 percent of the interests in the LLCs that the court had found to be nonmarital property belonging to Ryan. The division also did not include the debt to the Giffords. However, the division included the 50 percent of the interests in the LLCs that the court found to have been gifted to Krista during the marriage and 50 percent of the debts that the court found to be related to the LLCs and therefore marital debt. The court determined that in total, Ryan had been distributed net marital assets of $415,522 and Krista had been distributed net marital assets of $15,622. The court therefore awarded Krista $199,958 "in order to equalize the marital property division."

Krista appeals the decree of dissolution, and Ryan cross-appeals.

## ASSIGNMENTS OF ERROR

In her appeal, Krista claims that the district court erred when it (1) treated the cattle operation as nonmarital property belonging to Ryan and (2) treated her 50-percent interests in the three LLCs as marital property rather than as her separate property.

In his cross-appeal, Ryan claims that the district court erred when it found that his transfer of interests in the LLCs was a gift to Krista and when it therefore included the 50-percent interests in the LLCs as marital property rather than treating the entire interest in the LLCs as his separate property. He also claims that the court erred in its treatment of the debt to the Giffords associated with the Royal Colonial Inn.

## STANDARD OF REVIEW

[1] In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015). This standard of review applies to the trial court's determinations

regarding custody, child support, division of property, alimony, and attorney fees. *Id*.

## ANALYSIS

[2,3] The parties' assignments of error focus on the district court's treatment and division of the marital estate. We therefore review general standards relating to property division. Under Nebraska's divorce statutes, "[t]he purpose of a property division is to distribute the marital assets equitably between the parties." Neb. Rev. Stat. § 42-365 (Reissue 2008). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Despain v. Despain*, 290 Neb. 32, 858 N.W.2d 566 (2015). We have stated that under § 42-365, the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Despain v. Despain, supra*. The parties' assignments of error in this case focus primarily on the first step of the property division process concerning the court's determination of which assets and debts were part of the marital estate and which were the separate property of one or the other party. Because the classification of assets and debts impacts the division of property, we must also consider the district court's orders relating to the division of property. Finally, because the considerations in the appeal and cross-appeal are intertwined, we analyze the parties' assignments of error together.

*Cattle Operation.*

Krista claims that the district court erred when it treated the cattle operation as nonmarital property belonging to Ryan despite the significant increase in its value during the

marriage. We find no abuse of discretion by the district court in this determination.

The court found that the cattle had been owned by Ryan prior to the marriage, and it appears undisputed that at the time the parties remarried in August 2010, Ryan owned cattle valued at approximately $130,000. However, the evidence indicated that at the time the parties separated, the value of the cattle had increased to over $600,000. Krista contended that the increase in the value of the cattle occurred because Ryan had bought and sold cattle throughout the duration of the marriage, and she noted evidence that Ryan had financed such activity through an operating line of credit that was taken out in the names of both Ryan and Krista. She argued that as a result of such activity, the cattle operation had become marital property.

The court, however, found that the "increase in the value of the cattle . . . resulted from the increase in the market value of cattle, and from the input of [Ryan's] inheritance." The court determined that the increase in value could not be attributed to the contribution or effort of Krista, whose "help [with the cattle] was at most occasional and would not have resulted in any increase in the value of the livestock."

[4,5] Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id*. Setting aside nonmarital property is simple if the spouse possesses the original asset, but can be problematic if the original asset no longer exists. *Id*. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id*. If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id*. The burden of proof rests with the party claiming that property is nonmarital. *Id*.

In this case, the district court determined that the cattle were Ryan's separate property based on two of the above-mentioned exceptions: property acquired before the marriage and property acquired by inheritance. With regard to the cattle Ryan owned at the time the parties married, we note the reasoning of the Nebraska Court of Appeals in *Shafer v. Shafer*, 16 Neb. App. 170, 741 N.W.2d 173 (2007). In *Shafer*, the husband had owned a herd of cattle at the time the parties married, and the couple owned a larger herd of cattle at the time they divorced 13 years later. The Court of Appeals determined that the husband did not need to show that the specific cattle he owned at the time of the marriage were the same specific cattle owned at the time of the divorce. The Court of Appeals stated:

Obviously, one cannot draw a straight line from a cow owned by [the husband] to a cow owned 13 years later . . . , which is the prototypical "tracing" of a premarital asset so as to set it aside to the party who owned it at the time of the marriage. But in our view, the "disposable" nature of a cow does not, by itself, mean that a set-aside for preowned cattle is not allowable. Instead, it seems to us that the issue is resolved according to the particular facts of the case.

*Id.* at 178, 741 N.W.2d at 178-79. In *Shafer*, the Court of Appeals continued by noting evidence that the husband had been involved in the cattle business throughout the marriage and had reinvested proceeds from the sale of cattle owned at the time of marriage into replacement cattle that were part of the herd owned at the time of the divorce. The Court of Appeals determined:

Given the undisputed evidence concerning the cattle herd . . . , the controlling precedent on set-aside of premarital assets, and the fact that this is an equitable matter, we can discern no reason not to set aside to [the husband] that portion of the value of the present cattle herd which is attributable to [his] premarital cattle. In

doing so, we view the cattle herd as in effect a single asset—rather than taking a "cow by cow" approach to the tracing issue. Thus, we believe we have simply acknowledged the realities of what happens over time in a cattle operation. . . . To do otherwise seems to us to exalt form over substance and ignore the equitable nature of a dissolution action.

*Id*. at 178, 741 N.W.2d at 179. The Court of Appeals concluded in *Shafer* that it was appropriate for the trial court to set aside as the husband's separate property a portion of the value of the cattle herd owned at the time of divorce that reflected the value of the cattle herd the husband owned at the time of the marriage.

In the present case, the Sellers' marriage had lasted less than 4 years, as compared to the 13 years in *Shafer*, and therefore, it was even more reasonable to treat the cattle herd Ryan owned at the time of the marriage as being his separate property without requiring him to trace the specific animals. We note the facts of this case differ from *Shafer*, because the trial court in that case treated only a portion of the cattle herd owned at the time of the divorce as the husband's separate property and included a portion of the value of the herd as marital property to reflect that the herd had grown in size during the marriage. The court in this case treated the entire herd as Ryan's separate property even though the value of the herd had increased significantly. We determine that this difference was justified by the particular facts in this case.

With regard to Ryan's purchase of additional cattle using his separate inheritance, as noted above, property acquired by inheritance is an exception to the general rule that property acquired during the marriage is marital property, and an inheritance may remain separate property if it remains segregated or is traceable into its product. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). In this case, in addition to Ryan's testimony regarding the increased market value, Ryan also presented evidence which allowed the district court

to trace a portion of Ryan's inheritance that was used to purchase additional cattle. Therefore, it was appropriate for the court to treat the cattle purchased using the inheritance as Ryan's separate property. Based on the record before the court, we conclude that the district court did not abuse its discretion when it determined that the cattle operation was Ryan's separate property, and we reject Krista's assignment of error.

*Three LLCs.*

Krista claims that the district court erred when it treated the 50-percent interests in the three LLCs that Ryan had gifted to her as marital property rather than as nonmarital property belonging to her. In his cross-appeal, Ryan claims that the district court erred when it found that his transfer of interests in the LLCs was a gift to Krista and included any portion of the LLCs as marital property rather than nonmarital property belonging entirely to him. Given the evidence, we determine that the district court did not err when it found that the transfer to Krista was a gift, but we conclude that it did err when it determined that Krista's interests were marital property rather than Krista's separate property.

We first address Ryan's claim that the district court erred when it found that his transfer to Krista of the interests in the LLCs was a gift. He argues that the transfers were merely an estate planning device and that he intended to keep the entirety of the interests as his separate property. He also argues that the fact that the interests in the LLCs transferred were to be held by Ryan and Krista as joint tenants should not lead to a presumption that he made a gift to Krista. He cites *Schuman v. Schuman*, 265 Neb. 459, 658 N.W.2d 30 (2003), for the proposition that the manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's ability to determine how the property should be divided in an action for dissolution of marriage. Our point in *Schuman* was to disapprove a Court of Appeals' opinion to

the extent it could be read to hold that "nonmarital property which during a marriage is titled in joint tenancy cannot be considered as a nonmarital asset in an action for dissolution of marriage." 265 Neb. at 470, 658 N.W.2d at 39. In *Schuman*, we stated that the division of property "must depend upon the facts of the particular case and the equities involved." *Id*. Neither the district court nor this court is restricted in this case to an analysis of the documents which, standing alone, are not conclusive.

In the present case, the district court's finding that the transfer of interests in the three LLCs was a gift from Ryan to Krista was not based solely on the manner in which the property was titled or described in the assignment documents. Instead, there was testimonial evidence supporting the district court's ruling as well as several references in the transfer documents describing each transfer as being a "gift," based on which the court found, as urged by Krista, that Ryan intended to gift the 50-percent interests in the LLCs to Krista while retaining the 50-percent interests to himself. We find no error in such finding.

However, we conclude that having found Ryan had gifted the 50-percent interests in the LLCs to Krista, the court erred when it determined that the 50-percent interests Ryan had gifted to Krista were marital property but that the 50-percent interests he retained for himself were his separate property. Viewing the evidence regarding the transfers made by Ryan, we see two reasonable interpretations: (1) that Ryan gifted the 50-percent interests to Krista as her separate property and retained the 50-percent interests as his separate property or (2) that Ryan transferred 100-percent interests in the LLCs to the parties jointly. Under the second interpretation, it would have been proper to treat 100 percent of the interests as marital property subject to division in this action. As noted, the district court found the first interpretation was supported by the evidence. In the decree, the district court stated that "[Ryan's]

transfer to [Krista] of an interest in the LLCs was a gift from [Ryan] to [Krista]."

Having found the first interpretation, i.e., that Ryan gifted the 50-percent interests to Krista as her separate property and retained the 50-percent interests as his separate property, it would have been proper to treat each party's 50-percent interests as his or her separate, nonmarital property. Given the nature of the evidence under consideration, the court's determinations that Krista's 50-percent interests were marital property while Ryan's 50-percent interests were nonmarital property were not compatible with its finding that Ryan had gifted the 50-percent interests to Krista.

We therefore reverse the portion of the decree of dissolution in which the district court included Krista's 50-percent interests in the LLCs in the marital estate and divided her interests between her and Ryan. Instead, the court should have treated each party's 50-percent interests as separate property not subject to division and, upon remand, shall do so.

*Debts of LLCs and*
*Debt to Giffords.*

In view of our resolution of the classification of the LLCs issue, the portion of the decree regarding the debts associated with the LLCs needs to be reexamined by the district court. Subparagraph 22(a) of the decree stated as follows:

a. Because only one-half of the LLCs is a marital asset, for purposes of property equalization only one-half of the following debts associated with the LLCs should be taken into account in determining the value of the marital estate:

(i) Hershey State Bank has a debt secured by the LLCs, in the total amount of $863,514.50, one-half of which is $431,757;

(ii) Equitable business loan . . . is secured by property owned by Western Mobile Home Park, LLC, one-half of which is $53,800;

(iii) 2014 real estate taxes in the amount of $56,000 and are owed on real estate owned by the LLCs, one-half of which is $28,000;

(iv) The debt to Farmers State Bank is secured by property owned by Western Mobile Park, LLC, and one-half of the debt is $26,346.

Because the premise of subparagraph 22(a)(i) through (iv) is no longer accurate, we strike subparagraph 22(a)(i) through (iv) and direct the district court to reexamine the debts associated with the LLCs and, when calculating and dividing the marital estate upon remand, enter orders consistent with § 42-365.

Finally, Ryan claims in his cross-appeal that the court erred in its treatment of the debt to the Giffords associated with the Royal Colonial Inn. Given the evidence on this issue, the rationale of the district court's finding in subparagraph 22(d) of the decree that Ryan is not entitled to a deduction from the marital estate for the debt to the Giffords is not clear, and because we have determined above that the interests in the LLCs should be treated as the parties' separate properties, we reverse this finding and strike subparagraph 22(d) of the decree. We direct the district court to reexamine the evidence related to this debt and, when calculating and dividing the marital estates upon remand, enter orders consistent with § 42-365.

## CONCLUSION

We determine that the district court did not err when it determined that the 50-percent interests in the three LLCs retained by Ryan were nonmarital property and the transfer of the 50-percent interests in the three LLCs to Krista was a gift, but it erred when it determined that the 50-percent interests in the LLCs that Ryan gifted to Krista should be part of the marital estate. We therefore reverse the district court's ruling which treated Krista's 50-percent interests in the three LLCs as marital property and divided them between

the parties. For the reasons explained above, we reverse and strike the decree's finding in subparagraph 22(a)(i) through (iv) and 22(d) related to the debts associated with the LLCs. We remand the cause to the district court with directions to treat the parties' respective 50-percent interests in the LLCs as nonmarital property, to reexamine the classification of debts associated with the three LLCs, and to redetermine the division of property based on such treatment. We find no abuse of discretion in the district court's determination that the cattle operation was Ryan's separate property, and we affirm this ruling.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.