IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


LEWIS V. LEWIS


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JASON LEWIS, APPELLANT AND CROSS-APPELLEE,

V.

MELISSA LEWIS, APPELLEE AND CROSS-APPELLANT.


Filed April 25, 2017.    No. A-16-248.


Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Andrea L. Finegan McChesney and Joshua M. Livingston, of McChesney & Farrell Law Offices, and John R. Begley, of Kueny & Begley Law Offices, for appellant.

Matt Catlett, of Law Office of Matt Catlett, for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Jason Lewis appeals, and Melissa Lewis cross-appeals, from a decree entered by the district court for Lancaster County dissolving their marriage. On appeal, Jason argues the district court erred in awarding sole legal and physical custody of the minor children to Melissa, awarding the dependency exemptions of the minor children to Melissa for all eligible years, denying his motion for specific findings of the fitness of the respective parties for child custody, and ordering the right of first refusal to Jason for childcare only with respect to nonrelative parties. On cross-appeal, Melissa argues the district court erred in its division of the marital estate, not awarding alimony to her, and not requiring Jason to pay her attorney fees. For the reasons set forth below, we affirm.

## II. BACKGROUND

Jason and Melissa were married on September 23, 1995. The parties had two minor children born during the marriage, Jordyn, born in 2004, and Kyleigh, born in 2009. The parties' marital problems began around January 2014 and they have separated twice, the last separation occurring in June 2014. Jason filed a complaint for dissolution of marriage on July 2, 2014. Melissa filed an answer and counterclaim on July 22, 2014.

The district court entered a temporary order on August 11, 2014. The order awarded Jason and Melissa temporary joint legal custody of the children and Melissa temporary physical custody. The temporary order awarded Jason specific parenting time with the children to coincide with his work schedule. Jason was ordered to keep current all expenses related to the marital residence, maintain existing health and dental insurance for Melissa and the children, and to pay Melissa $1,500 in temporary attorney fees.

The district court issued a temporary order on May 4, 2015. In that order, the court ordered Jason to pay child support for both minor children in the amount of $750 per month.

The matter proceeded to trial commencing on September 30, 2015, and finishing on November 19, 2015. Both parties were represented by counsel and were the only two witnesses called at trial.

Jason testified at trial that he had been working for the Burlington Northern Santa Fe Railroad for the past 11 years as a conductor and switchman. Tax returns received into evidence demonstrated that he had earned $79,988.16, $84,500.79, and $86,641.99, respectively, in the three years preceding trial. Jason typically works overnights on Monday, Tuesday, and Wednesday, and works the dayshift on Saturday and Sunday. He is able to earn overtime through a bidding system, where the more senior workers are the first to bid on available overtime hours. Jason has worked roughly the same schedule for the past nine years and does not foresee the schedule changing in the near future. He has attained enough seniority that he does not have to worry about furlough during slow times at the railroad. However, he does not anticipate being able to work a standard dayshift schedule for the next 5 to 10 years.

Jason testified that he was paid twice a month, and that his paychecks were automatically deposited into a joint bank account owned by him and Melissa. He testified that Melissa handled the family finances and that he trusted Melissa to handle the bills and finances. Through his employment, Jason provided healthcare to his family and was contributing to a 401K retirement plan. During the parties' marriage, two loans were taken against this 401K. A loan of $20,000 was taken against the 401K in October 2013 to pay off loans against two vehicles the family owned. Melissa informed Jason about taking out the October loan against his 401K. A second loan of $5,800 was taken out against the 401K in April 2014. Melissa took out the April loan without informing Jason. He did not know about the loan until August or September 2014, after the parties had separated. Other than Jason's 401K, the only other substantial asset the parties owned was the marital residence, which they purchased from Jason's grandparents in 2009. This residence did not have significant equity as it was encumbered by a mortgage which nearly equaled the appraised value of the home.

Jason testified that he has a positive relationship with both of his children. He testified that being involved with his children and continuing their relationship is "more important than food." He believed that joint physical custody makes the children's lives smoother and that both parents need to be actively involved in the children's lives. Jason also testified that he believed Melissa was a good mother, and that although things were strained between them, they would be able to effectively co-parent. At the time of trial, Jason cared for the children once every two weeks, picking them up from school on Thursday and caring for them until he dropped them off at school the following Monday. He did not interfere with communication between the children and Melissa. He provided Jordyn with a cellphone to speak with the parent she was not with at nights. Jason testified that the parenting time he was allotted worked well before the trial, but he would prefer more parenting time.

Melissa testified that since 2013 she had been employed at the University of Nebraska-Lincoln as an administrative coordinator. At the time of trial, Melissa was making $17.72 per hour at her position. Prior to working at the university, she had been unemployed for one year and was receiving unemployment benefits. From 2000 to 2012, Melissa was employed at Cedar Youth Services. She began work at $10 per hour which gradually increased to $17 per hour at the time her employment ended. At the time her employment with Cedar Youth Services ended in 2012, her 401K had approximately $34,000. Melissa decided to cash out the value of the 401K and deposited it into the parties' joint checking account.

Melissa testified that she attended the Lincoln School of Commerce from 1997 until 1999, graduating with an associate's degree. After working at Cedar Youth Services for a few years, the parties decided that Melissa should return to school. Melissa attended Doane College from 2005 to 2008, receiving a bachelor's degree. She worked at Cedar Youth Services during the day and attended night classes twice per week during that time. Melissa testified that a bachelor's degree was a requirement for her current position at UNL. Melissa financed both of her degrees by taking out student loans. The parties began paying off the student loans after Melissa graduated from Lincoln School of Commerce in 1999. When Melissa began classes at Doane, the parties were able to defer the student loan payments while she was enrolled in school. At the time of trial, the total amount due on the student loans was $30,275. These student loans were all incurred during the time the parties were married.

Melissa testified that she has been the primary caregiver since the children have been born. She has taken care of their daily needs and made all the necessary healthcare appointments. She testified that Jason began offering to assist with the childcare around 2013. Melissa's sister has provided childcare for the children while Melissa works since the children's birth. She has done this without requesting payment. Melissa testified that Jason told her to move out on several different occasions, and that she did so in January 2015. She took several home furnishings with her in the process, and they remained in her possession at the time of trial. Melissa requested sole legal and physical custody of the children. She testified that she did not think she could get along well enough with Jason to share legal custody.

The dissolution decree was filed on January 25, 2016. The district court found that it was in the best interests of the children that Melissa be awarded sole legal and physical custody, with specific parenting time awarded to Jason. Jason's regular parenting time was every other weekend

from Thursday after school to the following Monday before school. Jason and Melissa would split holidays according to the parenting plan attached to the decree. Jason was ordered to provide healthcare for the children. Melissa was ordered to pay the first $480 of any healthcare costs per year, after which the parties would split the costs per the child support order. Additionally, Jason was ordered to pay child support totaling $1,225.00 per month for two children and $834 per month for one child. Melissa was awarded the child tax dependency exemptions for every eligible year. No spousal support was awarded to either party.

The decree made specific divisions of property and debts. Jason was awarded the marital residence, two vehicles, a portion of his 401K, and some of the parties' personal property. Jason was ordered to assume the following debts: the mortgage on the marital residence, the debt on the parties' Yukon Denali, assorted credit card debt, and the debts against his 401K. Melissa was awarded the Yukon Denali free and clear of its outstanding debts, part of Jason's 401K, and some of the parties' personal property. Melissa was ordered to assume the debt owed to her parents and the student loan debt. Neither party was awarded attorney fees.

## III. ASSIGNMENTS OF ERROR

Restated and consolidated, Jason argues the district court erred in (1) awarding sole legal and physical custody of the minor children to Melissa; and (2) awarding the dependency exemptions for all eligible years to Melissa. Jason did not argue his remaining assignments of error in his brief, therefore we will not address them. See *State v. Henry*, 292 Neb. 834, 875 N.W.2d 374 (2016). Melissa argues (1) the district court erred in its division of the marital estate; (2) not awarding her alimony; and (3) not requiring Jason to contribute toward her attorney fees.

## IV. STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Sellers v. Sellers*, 294 Neb. 346, 882 N.W.2d 705 (2016). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Deveny v. Deveny*, 295 Neb. App. 15, 886 N.W.2d 61 (2016).

## V. ANALYSIS

### 1. JASON'S APPEAL

#### (a) Custody

Jason argues that the district court erred in awarding Melissa sole legal and physical custody. He claims the court did not adhere to the Nebraska Parenting Act and contends that the evidence presented at trial does not support the district court's findings. Upon our review, we find Jason's assertions lack merit.

When custody of a minor child is an issue in a proceeding to dissolve the marriage of the child's parents, custody is determined by parental fitness and the child's best interests. *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009). Both Jason and Melissa testified at trial that

the other parent is fit to care for the children. Neither challenges the fitness of the other upon appeal. The district court did not find either party to be unfit in its decree or parenting plan. When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Id.*

Under Neb. Rev. Stat. § 42-364(3) (Reissue 2016), the court may place custody of minor children with both parents on a joint legal or physical custody basis, or both, when both parents agree to such or if the court specifically finds that joint custody is in the best interests of the minor children regardless of parental agreement or consent. When making custody determinations under § 42-364(3), if both parties do not agree, the court can award joint custody only if it holds a hearing and makes the required finding that joint custody is in the best interests of the children. See *Burcham v. Burcham*, Neb. App. 323, 886 N.W.2d 536 (2016). The parties did not agree to joint legal and physical custody. Melissa sought sole custody.

In this case, the district court provided very little rationale for its decision regarding custody issues. However, the district court's implicit assessment of witness credibility as communicated in its decree is particularly important. The findings of the trial judge are supported by the evidence and are not untenable. As to legal custody, both parties acknowledged that since their separation they have not communicated well and have engaged in unproductive arguments. Jason testified that in his opinion, communication would improve in the future. Melissa saw little hope that communication would improve. Both parties testified that historically, Melissa had been the primary caregiver for the children and had made the majority of decisions. Upon our de novo review, we find no abuse of discretion in the district court's determination that it was in the best interests of the children for Melissa to have legal custody. Melissa was primarily responsible for making the big decisions concerning the children prior to the parties' separation. We give weight to the fact that the district court heard and observed the witnesses and accepted Melissa's account of the parenting disagreements over Jason's.

We also find that the district court did not abuse its discretion in failing to grant Jason joint physical custody. Joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction, and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars. See *Donald v. Donald*, 296 Neb. 123, ___ N.W.2d ___ (2017). Here the evidence demonstrated that Jason's work schedule would not allow him to provide care for the children on three weeknights per week. This schedule makes it very difficult to attempt to equalize parenting time without denying Melissa overnight weekend parenting time. The evidence therefore supports the physical custody arrangement prescribed by the district court. Said schedule will support a stable atmosphere and is less likely to cause further litigation.

### (b) Dependency Exemptions

Jason next argues that the district court erred in awarding the child dependency tax exemptions to Melissa for all eligible years. Upon our review, we find that the district court did not abuse its discretion.

A tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015). In general, the

custodial parent is presumptively entitled to the federal tax exemption for a dependent child. *Id.* But a court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires. *Id.*

The district court in its decree stated that "due to the equities involved and the differences between the incomes" of the parties, Melissa should be entitled to the dependency exemptions for all eligible years. We note that as the custodial parent Melissa is presumptively entitled to the dependency exemptions. We find, given our standard of review, that the district court did not abuse its discretion in awarding Melissa the dependency exemptions. We particularly note that the district court chose not to award alimony to Melissa. Therefore, we cannot say that Jason has presented evidence sufficient to overcome the presumption in favor of the custodial parent given a full weighing of the equities present in this case.

## 2. MELISSA'S CROSS-APPEAL

### (a) Division of Marital Estate

Melissa argues on cross-appeal that the district court erred in its division of the marital estate. Upon our review, we find these assertions lack merit.

Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of marital property is a three-step process. The first step is to classify the parties' property as marital or non-marital, the second step is to value the marital assets and marital liabilities of the parties, and the third step is to calculate and divide the net marital estate between the parties in accordance with statutory principles. *Marshall v. Marshall*, 24 Neb. App. 254, 885 N.W.2d 742 (2016). The marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties. *Id.* The burden of proof to show that property is non-marital remains with the person making the claim. *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002).

In its decree, the district court did not classify whether particular items of property were marital or non-marital. However, from the overall tenor of the decree, including the manner in which the property was divided, it is clear that the district court found all of the parties' property and debt to be marital. The district court awarded the marital residence to Jason. The decree valued the marital residence at $170,000 with $152,474 in remaining mortgage debt. Melissa testified at trial that she wanted the marital residence awarded to Jason because she could not afford the mortgage payment. Jason testified that based on his dealings with a real estate agent, he would lose money from the sale of the marital residence. Excluding the value of the marital residence that was awarded to Jason, Jason was awarded $54,107 in assets. Excluding the debt associated with the marital residence, Jason was ordered to assume $48,935 in debts. Therefore, Jason's net total value of assets, excluding the marital residence, was $5,172. With the equity in the marital residence included, Jason has net total assets over debt of $22,698.

Jason argues that Melissa's student loans should be considered a non-marital debt. It is clear to us based on the language in the decree that the district court considered the student loans Melissa incurred for her education during the marriage to be marital in nature. We agree with the district court's finding. The student loans were incurred during the marriage to enable Melissa to attend college and improve her career opportunities. Both parties testified that it was a joint

decision for Melissa to go back to school. The evidence shows that the debt was incurred for the joint benefit of the parties because it allowed Melissa to maintain and obtain employment requiring progressively more advanced degrees and contribute more income to the household.

Melissa was awarded $33,465 in total assets consisting of the Denali, an $18,000 payment from Jason's 401K, and household furnishings. Including the student loan debt as marital debt, Melissa was ordered to assume $32,860 in debts. Therefore, Melissa's net total value of assets, including the student loan debt, was $605.

At first blush, the district court's award of net assets to Jason of $22,698 versus $605 to Melissa would appear to be inequitable. The decree itself does not total the value of assets and debts nor does it explain in any detail the reasons behind the allocation. However, given our standard of review, there is sufficient evidence in the record to support the district court's decision. As noted, Jason's award includes approximately $17,500 in equity in the marital residence. Testimony at trial indicated that if Jason sought to sell the residence, the majority of this equity would be lost due to commissions and closing costs associated with the sale. Moreover, Jason has been given the vast majority of the debt, including the debt on the vehicle awarded to Melissa. He will be making significant monthly expenditures in servicing that debt. When these factors are combined with Jason's obligations for support, we cannot say the district court abused its discretion in its division of property.

Melissa makes the additional argument that since Jason did not submit a complete "Exhibit A" before trial, which is required pursuant to a local rule, the district court erred in not adopting her proposed division of marital property. The record reveals that the district court issued a pretrial conference order on January 23, 2015. The court ordered that the issues at trial would be limited to the issues outlined in each of the party's "Exhibit A", which was to be submitted pursuant to the local rule. Each party's "Exhibit A" was to be filed before the pretrial conference, however Jason made no submission. The court allowed Jason to file his "Exhibit A" within ten days of the pretrial conference order. Jason filed his "Exhibit A" on February 9, 2015, after the ten day deadline. His filing was still incomplete, leaving most of the form blank. Therefore, Jason did not fully comply with the local rule or the court's order. Nonetheless, the court chose not to penalize Jason by simply adopting Melissa's proposed division.

We cannot say that the district court abused its discretion in waiving its rule. In appropriate circumstances where no injustice would result, the district court may exercise its inherent power to waive its own rules. *Kibler v. Kibler*, 287 Neb. 1027, 845 N.W.2d 585 (2014). The record reveals that both parties were aware of the issues that were to be tried before the district court. The only witnesses called were the parties themselves. Melissa did not suffer any surprise or injustice when the district court allowed Jason to present evidence in support of his proposed property division at trial. We find no error in the district court refusing to adopt Melissa's property division based on Jason's lack of compliance with the local rules. While we do not condone Jason's lack of compliance, we cannot say that the district court's decision to waive the local rule was an abuse of discretion.

(b) Alimony

Melissa argues on cross-appeal that the district court erred in not awarding her alimony. Upon our review, we find these assertions lack merit.

Neb. Rev. Stat. § 42-365 provides:

When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other . . . as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

In addition to the criteria listed in § 42-365, in considering alimony upon a dissolution of marriage, a trial court is to consider the income and earning capacity of each party, as well as the general equities of each situation. *Becker v. Becker*, 20 Neb. App. 922, 834 N.W.2d 620 (2013). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id.* The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. Disparity in income or potential income may partially justify an award of alimony. *Id.* In reviewing a trial court's award of alimony, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.*

Melissa argues that the district court abused its discretion in not awarding her alimony because her income was one-third of Jason's income and that Jason's net distribution from the marital estate was nearly $20,000 greater than that to Melissa. As stated in Section (II)(a), supra, excluding the equity in the marital residence awarded to Jason, Jason's distribution from the marital estate was approximately $4,500 more than Melissa. Jason was also ordered to pay off the majority of the parties' debts, including the balance due on Melissa's Denali. The payments on the Denali can obviously be viewed as support that Jason will be paying Melissa into the future. Additionally, Jason will be paying significant child support. Moreover, Melissa has been awarded both tax exemptions for the children for the duration of their minority. This constitutes a significant economic benefit "nearly identical to an award of child support or alimony." *Anderson v. Anderson, supra.*

We also note that Melissa has worked throughout the majority of the marriage and has obtained college degrees with the support and encouragement of Jason. As a result, her career has advanced. Finally, we note that if a calculation is completed which begins with Jason's after tax income and then deducts his child support obligation and debt service requirements, he has little extra income left beyond that which is needed to pay his basic living expenses. Based on the totality of the foregoing factors, we cannot find that the district court abused its discretion in not awarding alimony to Melissa.

### (c) Attorney Fees

Melissa argues that the district court erred in not awarding her attorney fees.

The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and the general equities of the case. *Burcham v. Burcham, supra.*

Melissa once again argues that the district court erred in not awarding her attorney fees based on the disparity of the parties' incomes and the disparity between the division of the marital estate. For all the reasons set forth above regarding alimony, we find that the district court did not abuse its discretion in not awarding Melissa attorney fees. We additionally note that in its temporary order the district court did order Jason to pay $1,500 towards Melissa's attorney fees.

## VI. CONCLUSION

Upon our review, we conclude that the district court did not err in awarding sole legal and physical custody of the minor children to Melissa. We conclude the district court did not err in awarding the dependency exemptions for all eligible years to Melissa. We conclude the district court did not err in its division of the marital estate. Additionally, we conclude the district court did not err in not awarding her alimony. Finally, we conclude the district court did not err in not requiring Jason to pay her attorney fees.

AFFIRMED.