Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/10/2019 09:06 AM CDT

SHARON L. ROHDE, APPELLEE, V.
KEITH E. ROHDE, APPELLANT.
___ N.W.2d ___

Filed May 10, 2019.    No. S-18-179.

1. **Divorce: Appeal and Error.** In a marital dissolution action, an appellate
   court reviews the case de novo on the record to determine whether there
   has been an abuse of discretion by the trial judge.
2. **Evidence: Appeal and Error.** In a review de novo on the record, an
   appellate court is required to make independent factual determina-
   tions based upon the record, and the court reaches its own independent
   conclusions with respect to the matters at issue. When evidence is in
   conflict, the appellate court considers and may give weight to the fact
   that the trial court heard and observed the witnesses and accepted one
   version of the facts rather than another.
3. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the
   reasons or rulings of a trial judge are clearly untenable, unfairly depriv-
   ing a litigant of a substantial right and denying just results in matters
   submitted for disposition.
4. **Divorce: Property Division.** The ultimate test in determining the appro-
   priateness of the division of property is fairness and reasonableness as
   determined by the facts of each case.
5. **Property Division.** As a general rule, a spouse should be awarded one-
   third to one-half of the marital estate, the polestar being fairness and
   reasonableness as determined by the facts of each case.
6. **Divorce: Property Division.** Under Neb. Rev. Stat. § 42-365 (Reissue
   2016), the equitable division of property is a three-step process. The first
   step is to classify the parties' property as marital or nonmarital, setting
   aside the nonmarital property to the party who brought that property to
   the marriage. The second step is to value the marital assets and marital
   liabilities of the parties. The third step is to calculate and divide the net
   marital estate between the parties in accordance with the principles con-
   tained in § 42-365.

7. **Property Division: Appeal and Error.** As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.

8. **Divorce: Property Division: Equity.** The purpose of assigning a date of valuation in a decree is to ensure that the marital estate is equitably divided.

9. **Property Division: Equity: Time.** The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations.

10. **Divorce: Property Division.** Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance.

11. **Property Division: Proof.** The burden of proof rests with the party claiming that property is nonmarital.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

A. Bree Robbins and Nancy R. Shannon, of Cordell Cordell, L.L.P., for appellant.

Christopher A. Vacanti, of Vacanti Shattuck, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Keith E. Rohde appeals from a decree dissolving his marriage to Sharon L. Rohde, challenging the division of property. Keith proposes two novel theories: (1) All assets must be valued using a single date and (2) a coverture formula is required to establish the premarital value of a business. We decline both invitations. The first would impinge upon the discretion necessary to equitably divide a marital estate. And the second depends upon speculation and assumptions generally inconsistent with such valuations. Keith's remaining arguments lack merit. We affirm the decree.

## BACKGROUND

Before Sharon filed a complaint for dissolution in November 2016, she and Keith were married for 21 years. During the period between filing and trial, the parties lived separate and apart for 1 year. The assets relevant on appeal include real estate, notes receivable, businesses, accounts, household goods, jewelry, and vehicles.

### Real Estate and Notes Receivable

The parties owned three properties in Omaha, Nebraska. One property was the marital home (184th Plaza home); one property was their friend's home (140th Ave. home), which was secured by a note receivable from the friend; and one property was occupied by another person (Polk St. home), which was secured by a note receivable.

The parties offered appraisals of the 184th Plaza home. Sharon's appraiser valued the home at the date of filing. Keith's appraiser valued the home at the date of trial. Sharon testified to the value of the 140th Ave. home note receivable at the date of trial and presented evidence of the outstanding note.

Keith stated that prior to the marriage, he put a downpayment on the parties' first home and acknowledged that Sharon repaid him part of the downpayment. He asked the court to classify the downpayment as nonmarital.

### Businesses

Since 1989, Keith has owned Metro Excavating Inc. (Metro). Keith continued to operate the business throughout the marriage. Keith testified that Metro was operational for over 70 months before the marriage. Keith asked the district court to offset the current value of the business by 23.13 percent as the value of the nonmarital business.

Additionally, Keith owns Storage Road Sales & Service Inc. (Storage Road). Before Keith married Sharon, he purchased the land for $34,000. He then constructed a building on the property that cost $17,000 for the steel framework and tin exterior.

Both parties obtained appraisals of the property and businesses. Keith's appraiser valued the Storage Road property at the date of trial. Sharon's appraiser gave two valuations for the property at the date of filing: the lower appraisal used the income capitalization approach, and the higher appraisal used the direct sales comparison approach. The higher valuation was rebutted by Keith's appraiser. Keith testified that the nonmarital value of the Storage Road property was $252,000.

In June 2016, Keith entered into three leases with Walvoord Finish Grading Inc. (collectively Walvoord Leases). The leases were for the equipment of both Metro and Storage Road, as well as a property lease. The leases were valued at the date of trial, which excluded the first payments made during the pendency of the action. Keith asked the district court to take into consideration the tax consequences when awarding the leases, and specifically in reducing the value by 32 percent. Additionally, during the pendency of the action, Keith sold several pieces of business equipment.

Sharon presented evidence that she is the sole owner of KMT Storage Company, Inc. (KMT), which was appraised at the date of filing.

## ACCOUNTS

The parties had several bank and retirement/investment accounts. There are three categories of accounts: joint accounts, commercial accounts, and investment accounts. The parties submitted evidence that allowed the court to value the joint and commercial accounts on both the date of filing and trial. Sharon submitted evidence of the value of the investment accounts on a separate date. Keith did not offer any evidence as to the value of the investment accounts on a separate date.

During the pendency of the action, Sharon removed $50,000 from one of the joint accounts. She testified that she removed the money at the advice of counsel to pay bills that Keith used

to pay for. Sharon presented evidence of her personal bank accounts with a value at the date of filing. The account balance did not account for the full $50,000 removed from the joint account.

## Remaining Assets

Keith offered an appraisal of Sharon's jewelry valued at the date of trial. Keith and Sharon offered the same appraisals of the household goods at the date of trial.

Sharon offered an appraisal of her Ford Explorer. The vehicle was valued at the date of trial. At the date of filing, Keith owned a GMC pickup, and during the pendency of the action, he sold the GMC pickup and purchased a Dodge Ram pickup. In Sharon's statement of assets and debts, she valued Keith's Dodge Ram pickup at the date of trial.

## Decree

The district court valued the following assets at the date of filing: the 184th Plaza home, the commercial accounts, the Storage Road property, and the KMT property. It valued the following assets at the date of trial: the 140th Ave. home note receivable, the joint accounts, the Walvoord Leases, household goods, jewelry, and vehicles. It valued the investment accounts and equipment sales on a separate date.

The district court awarded the following assets to Sharon: the 184th Plaza home, KMT, the commercial accounts for KMT, her personal checking accounts, her jewelry, and the Ford Explorer. The district court awarded the following assets to Keith: the 140th Ave. home note receivable, Metro and Storage Road, the commercial accounts for Metro and Storage Road, the Walvoord Leases, the equipment sale, and the Dodge Ram pickup. The district court equally split between the parties the Polk St. home note receivable, the joint accounts, the investment accounts, and the household goods.

When dividing the marital estate, the district court made findings. Regarding the nonmarital value of Metro, it reasoned

there was no testimony or evidence as to the value of Metro on the date of the marriage 22 years ago and "to sit here and for me to place a value on Metro . . . as a going concern in 1995, I just don't know that I can do that." It declined to classify a nonmarital value for the first home downpayment, it offset the purchase price and cost of the Storage Road building as nonmarital, it did not consider tax consequences of the Walvoord Leases, and it classified Keith's inherited tools as nonmarital.

Keith filed a timely appeal, which we moved to our docket.[1]

## ASSIGNMENTS OF ERROR

Keith assigns that the district court erred (1) by valuing assets and debts on different dates, (2) by finding that all of Metro was a marital asset and failing to offset any portion as nonmarital, and (3) in its classification, valuation, and division of assets and debts in the marital estate.

## STANDARD OF REVIEW

[1] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[2]

[2] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[3]

[3] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2018).

[2] See *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

[3] *Id.*

litigant of a substantial right and denying just results in mat-
ters submitted for disposition.[4]

## ANALYSIS

[4,5] We begin by reciting familiar propositions from the law
controlling equitable division of marital property and debts. The
ultimate test in determining the appropriateness of the division
of property is fairness and reasonableness as determined by the
facts of each case.[5] This is the polestar guiding our analysis of
the issues. And as we have often repeated, a spouse should be
awarded one-third to one-half of the marital estate.[6]

[6] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equi-
table division of property is a three-step process. The first step
is to classify the parties' property as marital or nonmarital,
setting aside the nonmarital property to the party who brought
that property to the marriage. The second step is to value the
marital assets and marital liabilities of the parties. The third
step is to calculate and divide the net marital estate between
the parties in accordance with the principles contained in
§ 42-365.[7]

As we have already noted, when evidence is in conflict, an
appellate court may give weight to the fact that the trial judge
heard and observed the witnesses and accepted one version of
the facts rather than another.[8] This rule drives the outcome of
the issues presented—other than the novel theories that Keith
asserted. We turn first to those theories.

### Valuation Dates

In brief, Keith argued that the district court erred when it
failed to value all the assets and debts on a single date. He

---

[4] *Id.*

[5] *Id.*

[6] See *id.*

[7] *Id.*

[8] See *id.*

contended that the court contradicted itself when it valued assets on separate dates and stated:

> To be consistent, these values to me appear to be the most credible given — I'm not saying the others aren't credible — the most accurate, trying to suggest a time and a place for division, so — I don't want to pick one date for one account, one date for another account.

More specifically, Keith contends that the district court erred when valuing the 184th Plaza home, the Storage Road and KMT properties, and business accounts on the date of filing; the 140th Ave. home, jewelry, household goods, joint accounts, and vehicles on the date of trial; and the investment accounts and business equipment on an unrelated date. He requests us to remand the matter back to the district court "with instructions to value the property as of one particular date that is relationally related to the [marital] estate or remand for a new trial on the issue."[9] We decline to do so.

[7] As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. The date of valuation is reviewed for an abuse of the trial court's discretion.[10]

Although we have never explicitly stated that more than one valuation date may be utilized in valuing marital assets and liabilities, we have alluded to that understanding.[11] In *Brozek v. Brozek*,[12] the appellant argued that the date of separation rather than the date of trial was the appropriate date to value the marital assets. The district court valued most of the marital property at the date of separation, valued farm equipment a year after separation, and valued the corporate

---

[9] Brief for appellant at 15.

[10] *Osantowski, supra* note 2.

[11] See, *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016); *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998).

[12] *Brozek, supra* note 11.

shares 3 years later at the date of trial. Although the corporate shares were classified as a nonmarital asset for the appellee, the district court found the value at trial, rather than the value at separation, to be more persuasive. We did not disturb this method.

In *Davidson v. Davidson*,[13] the district court did not value individual assets to establish the marital estate; instead, it used the difference in the appellant's net worth immediately prior to marriage and 4 months after filing for dissolution. We relied on a Nebraska Court of Appeals' case, where evidence supported valuations made 1 week before trial and were rationally related to the property to be divided. We reasoned that the valuation of the appellant's net worth 4 months after filing for dissolution was rationally related to the property composing the marital estate. We concluded that the district court did not abuse its discretion.

In *Walker v. Walker*,[14] the Court of Appeals discussed how a valuation date should be determined. The appellant argued that the real estate should have been valued at the date of dissolution and not the date of separation. The court acknowledged that there is case law to support the proposition that the date of trial is the appropriate date for valuation. But, "we find no hard and fast rule that prohibits the district court from using other times as the appropriate date for valuation purposes so long as the value selected bears 'a rational relationship to the property to be divided upon dissolution.'"[15]

Although many states use a uniform date of separation or date of dissolution for their valuation date, several states follow an approach similar to ours.[16] New York and Ohio courts

---

[13] *Davidson, supra* note 11.

[14] *Walker v. Walker*, 9 Neb. App. 694, 618 N.W.2d 465 (2000).

[15] *Id*. at 699, 618 N.W.2d at 470.

[16] 1 Barth H. Goldberg, Valuation of Divorce Assets § 1:16 (rev. ed. 2005 & Cum. Supp. 2018-19).

have discussed the issue of valuing separate assets on separate dates. In *Collins v. Donnelly-Collins*,[17] the Appellate Division of the Supreme Court of New York stated that "selection of the appropriate valuation dates for various assets is addressed to the sound discretion of the trial court, upon consideration of all of the relevant facts and circumstances in the case." In *Berish v. Berish*,[18] the Ohio Supreme Court discussed the pragmatic difficulties of finding one date that the court could always use to value the marital estate. It was reluctant to accept such a simple formula, because "'[t]he formula for division derives from the facts of the individual case'" and the court must have the "necessary flexibility to exercise its discretion."[19] We find these cases persuasive.

[8,9] We decline to mandate that a trial court must use only one valuation date in equitably dividing a marital estate. The date for valuation must be rationally related to the property being divided. Frequently, a single valuation date will be appropriate; but sometimes, it will not. The purpose of assigning a date of valuation in a decree is to ensure that the marital estate is equitably divided.[20] This harkens back to the polestar of equitable division, which is fairness and reasonableness under the facts of the case. What may be a fair and reasonable valuation on one date for an asset may be unfair and unreasonable for another asset on the same date. "The choice of a date as of which assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations."[21] It can become arduous for the district court to determine one date that fairly and reasonably values the

---

[17] *Collins v. Donnelly-Collins*, 19 A.D.3d 356, 357, 796 N.Y.S.2d 159, 160 (2005).

[18] *Berish v. Berish*, 69 Ohio St. 2d 318, 432 N.E.2d 183 (1982).

[19] *Id.* at 321, 432 N.E.2d at 185.

[20] *Blaine v. Blaine*, 275 Neb. 87, 744 N.W.2d 444 (2008).

[21] *Berish, supra* note 18, 69 Ohio St. 2d at 319, 432 N.E.2d at 184.

entire marital estate.[22] We choose not to tie the hands of the district court; thus, the court need not find "'[o]ne [date] to rule them all.'"[23]

During oral argument, Keith retreated somewhat from the original contention made in his brief. He conceded that at trial, he had failed to present evidence to value the entire marital estate on a single date. In other words, his evidence did not attempt to value all of the marital property as of one, and only one, date. Therefore, it seems disingenuous to now argue that the district court should have selected a single valuation date despite his own failure to adduce evidence accordingly.

The dates used by the district court to value the marital estate were rationally related to the respective items of property. The value at the date of filing was rationally related to the 184th Plaza home, the commercial accounts, and the business properties, because once the parties separated, these assets no longer benefited them both. The value at the date of trial was rationally related to the 140th Ave. home, jewelry, joint accounts, household goods, and vehicles, because several assets had no variation in value and the joint accounts were still used by both parties until the time of trial. The values of the investment accounts and equipment sales were rationally related to the valuation date, because the parties presented only one date to value each asset. We conclude that the district court did not abuse its discretion in valuing marital assets on dates that rationally related to the property being divided.

## Nonmarital Business Value

Keith argues that the district court abused its discretion when it failed to classify any portion of Metro as nonmarital. He requests this court to adopt the coverture formula to

---

[22] See *Berish, supra* note 18.

[23] See J.R.R. Tolkien, The Fellowship of the Ring 49 (Houghton Mifflin 1994) (1954).

determine the nonmarital value of Metro. He testified that Metro had been in existence for 320 months and that over 70 of those months were prior to the marriage. He contends that 23.13 percent of Metro's value was nonmarital, which, he argues, we should deduct from the marital estate.

We note that at trial, Keith argued that his nonmarital valuation of Metro is "not really a coverture method." The district court responded that "the manner in which the value is trying to be determined is more or less a coverture method." The district court acknowledged that the business was worth something when the parties married, but declined to adopt the valuation because there was no testimony or evidence presented as to the worth of the business at the time of the marriage.

[10,11] Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance.[24] The burden of proof rests with the party claiming that property is nonmarital.[25] Because Keith claimed that a portion of Metro was nonmarital, it was his burden to show what interest or value was nonmarital.

In dissolution actions in Nebraska, the coverture formula has been extended only to dividing pensions[26] and termination payments from employment by an insurance company.[27]

> "'Simplified, the coverture formula provides that the numerator of the fraction used to determine the marital portion is essentially the number of months of credible service of the employed spouse while married and therefore is the pension contribution *while married* and that the denominator is the total number of months

---

[24] *Osantowski, supra* note 2.

[25] *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016).

[26] See *Webster v. Webster*, 271 Neb. 788, 716 N.W.2d 47 (2006).

[27] See *Bergmeier v. Bergmeier*, 296 Neb. 440, 894 N.W.2d 266 (2017).

> that the spouse has [been] or will be employed which
> resulted in the pension the employee will receive. This
> denominator number includes and will include the time
> the employed spouse worked before, during, and after
> the marriage.'"[28]

We have not applied the coverture formula to the valuation of the premarital portion of a business. We suspect that the variations in revenue and expenses from year to year, the growth or decline of a business due to numerous factors, and the variations in business cycles make it extremely unlikely that the coverture formula would produce anything other than mere speculation or conjecture. While we are not prepared to definitively preclude a trial court from ever using the coverture formula for such a purpose, we think it is unlikely to be appropriate except in very unusual circumstances.

We note that in other states, there have been isolated instances where intermediate appellate courts have accepted the use of the coverture formula as a method to determine nonmarital business value.[29] But in each of those cases, the appellate court affirmed a valuation method selected by a trial court; in none did the appellate court mandate the use of such a method. No state supreme court has expressly adopted the coverture formula as a method to determine nonmarital business value.

We are not satisfied that the coverture formula was appropriate under the facts of this case. Therefore, the district court did not abuse its discretion when it declined to apply that method.

We next look to whether other evidence was presented for the nonmarital value of Metro. Other than the notion of using the coverture formula, no evidence was submitted to value

---

[28] *Id.* at 451-52, 894 N.W.2d at 275 (quoting *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009) (emphasis in original)).

[29] See, *Haslem v. Haslem*, 133 Ohio App. 3d 257, 727 N.E.2d 928 (1999); *Edwards and Edwards*, 141 Or. App. 11, 917 P.2d 504 (1996).

Metro as a going concern at the time when the parties were married. Where there is nothing on the record to show the source of premarital funds, they should be considered part of the marital estate.[30] There was no credible evidence in the record to support a nonmarital value of Metro. It necessarily follows that the district court did not abuse its discretion when it classified all of Metro as marital property.

## Remaining Arguments

Keith makes several additional arguments pertaining to the valuation and division of marital and nonmarital assets. He argues that the district court failed to classify the first home down payment as nonmarital, failed to consider tax consequences of the Walvoord Leases, failed to separate the Walvoord Leases payments made to the joint account before division, incorrectly valued the nonmarital value of the Storage Road property, and incorrectly adopted Sharon's appraisals for the 184th Plaza home and the Storage Road property. After reviewing the record de novo, we conclude that the district court did not abuse its discretion in equitably dividing the marital and nonmarital assets. These arguments lack merit.

Additionally, Keith argues that the district court failed to reduce an award of the joint accounts to Sharon by $50,000; erroneously valued nonmarital tools as part of the marital estate; and accounted twice for money used to purchase the Dodge Ram pickup.

Although there appear to have been some mathematical variations from the pronounced decision to the written decree, the difference in the adjusted equalization amount would amount to less than one-half of 1 percent of the entire marital estate. And Keith did not avail himself of the remedies to correct this at the trial court level. His trial counsel approved the form of the decree. Thus, Keith was clearly aware of its content. And he did not pursue a motion to alter or amend the

---

[30] *Stanosheck, supra* note 25.

judgment. As we have stated throughout this opinion, fairness and reasonableness is our guiding polestar. We cannot say that mathematical variations amounting to less than one-half of 1 percent of the entire marital estate resulted in an unfair or unreasonable division. We conclude that these mathematical variations are not clearly untenable, nor do they deprive Keith of a just result; therefore, the district court did not abuse its discretion.

## CONCLUSION

Having reviewed the record de novo, we conclude that the district court did not abuse its discretion in determining the valuation dates for the marital assets and in classifying, valuing, and dividing the marital estate. Therefore, we affirm the decree.

AFFIRMED.