IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HARMS V. HARMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL D. HARMS, APPELLANT,

V.

NANCY A. HARMS, APPELLEE.

Filed August 27, 2019.    No. A-18-403.

Appeal from the District Court for Franklin County: STEPHEN R. ILLINGWORTH, Judge.
Affirmed as modified.

Jaclyn N. Daake, of Duncan, Walker, Schenker & Daake, P.C., L.L.O., for appellant.

Jeffrey P. Ensz, of Lieske, Lieske & Ensz, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

PIRTLE, Judge.

INTRODUCTION

Michael D. Harms appeals from a decree of dissolution entered in the district court for Franklin County which dissolved his marriage to Nancy A. Harms and divided their marital property. Michael argues that the division of property was inappropriate because of discrepancies in the decree and the exclusion of certain debts from the marital estate. Michael further argues that the alimony award was an abuse of discretion. For the reasons that follow, we affirm as modified.

BACKGROUND

Michael filed a complaint for dissolution of marriage on January 22, 2016. A final hearing was held on November 1, 2017. The court entered a decree on March 27, 2018, dissolving the marriage and dividing the marital estate. The court found that Nancy's expenses that were paid by Michael should be classified as temporary alimony and that property she purchased with a joint

- 1 -

credit card would be treated as her separate property. The court also classified certain debts as nonmarital and assigned them to Michael. Finally, the court awarded alimony to Nancy. It is from this order that Michael appeals.

## STATEMENT OF FACTS

Michael and Nancy were married June 9, 1984, in Seward, Nebraska. During the duration of their marriage they raised four children together, all of whom are now adults. Michael has been a farmer and rancher for all of his adult life. During the marriage Nancy became a registered nurse and has worked as such off and on throughout the marriage. In 2015, Michael's mother passed away and he inherited farmland, machinery, and money from her estate. Michael began farming this land in addition to farming his other land. Michael filed for dissolution of marriage in January 2016.

After the filing of the action, Nancy found new employment in Lincoln and moved out of the marital home in April 2016. While she brought with her some personal items, Nancy largely furnished the new apartment with purchases that were charged to the joint credit card. In addition, Nancy charged items such as eating out and travel to the same credit card. Nancy did not pay anything toward the balance on that credit card until January or February 2017. Rather, Michael paid the credit card balance as well as the cost of Nancy's cellphone and student loans.

After the separation in 2016, Michael continued his farming and ranching operation, but rented out his inherited property rather than farm it himself. In addition, Michael has taken on a part-time job as a crop adjuster. Michael and Nancy filed a joint tax return for 2016 and Michael took out a loan to pay for that tax liability in July 2017. It was not until after the end of 2016 that the finances of the two were separated.

## ASSIGNMENTS OF ERROR

On appeal, Michael assigns that the district court erred in (1) its classification, valuation, and accounting of certain assets; (2) failing to include certain debts in the marital estate; and (3) awarding alimony to Nancy.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge; this standard of review applies to the trial court's determinations regarding the division of property, alimony, and attorney fees. *Longo v. Longo*, 266 Neb. 171, 663 N.W.2d 604 (2003). An abuse of discretion occurs when the trial court's reasoning or ruling is based upon reasons that are untenable or unreasonable, and as a result a litigant is deprived of a substantial right and denied just results in the matter. *Coufal v. Coufal*, 291 Neb. 378, 866 N.W.2d 74 (2015).

## ANALYSIS

*Valuation, Classification, and Accounting of Property.*

Michael argues that various items of property were either improperly classified as marital property, improperly valued, or there were errors in the calculations by the court. Specifically,

Michael requests that this court adjust the determination of marital property to account for the value of a $200 mattress, assign the value of a $1,000 mattress as separate property, correct the exclusion of a Chevy Tahoe, and adjust the value of the marital home.

In a dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 2016). Equitable property division is a three-step process. *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). The first step is to classify the parties' property as marital or nonmarital. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Gibilisco v. Gibilisco, supra*. Division of the marital estate is not subject to a precise mathematical formula, but rather, the ultimate test in determining the appropriateness of the property division is fairness and reasonableness for the parties. *Schaefer v. Schaefer*, 263 Neb. 785, 642 N.W.2d 792 (2002). It is not considered an abuse of discretion when discrepancies in the division of property arise but do not impact the equity of the distribution as the parties have not been deprived of a substantial right or a just result. See *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

The initial issues raised by Michael, the assignment and valuation of the two mattresses, represent less than one quarter of a percent of the net value of the estate. As such, the discrepancies do not impact the ultimate fairness of the division of property and the division does not constitute an abuse of discretion on the part of the court. See *id.* With regard to the issue of the Chevy Tahoe, the court awarded four other vehicles to Michael and listed the value as $37,250. The values of each of those four other vehicles had been agreed to by the parties and totaled $31,750, which creates a discrepancy of $5,500 in the division of the property. Nancy valued the Tahoe at $3,000 and Michael valued it at $8,000, the median value of which is $5,500. Thus, it appears the court intended to include the Tahoe as part of Michael's division of property and merely excluded the item number in the order although it included the value. As such, we find that the order should be modified to specifically include item C3, Chevy Tahoe, as part of Michael's award of property with no adjustment to the value of that line.

Finally, Michael disputes the valuation of the marital home. Evidence presented showed the house was constructed for a cost of $230,000. This was the amount the court utilized. The house was constructed in 2013 on land owned by Michael's mother which was ultimately inherited by Michael as part of her estate. It had an assessed value for tax purposes of $233,390 in 2016. Michael maintained that the value is less than this because selling the home would require parceling it off from the farmland and because the water and electrical are provided through the farming operation. Nancy alleges that the present sale value would be higher. Given the assessed value of the house and the cost of construction, we cannot say the court erred in valuing the home at $230,000.

*Exclusion of Debts From Marital Estate.*

Michael alleges that the court erred in excluding certain debts from the marital estate. These debts were identified as I2, I3, and I4 on the joint property statement. I2 is an operating loan for the farm initially taken out in 2015. I3 is a loan for farming expenses and was taken out in

September 2017. I4 is a loan that was taken out by Michael in order to pay the higher than usual income tax liability that arose from the couple's joint 2016 taxes. The court found that each of these loans were related to farming income and, thus, found that Michael should receive "no credit" for the debts and did not include them in the calculation of the marital estate. Although the language of the district court is unclear in stating that Michael should receive "no credit" for the debts, it appears that this was a determination that such debts should be regarded as nonmarital debts. For the reasons that follow, we disagree with this determination.

Again, we begin by applying the three-step process of dividing marital assets starting with separating the assets into marital and nonmarital assets. It is clear from the evidence that I3 was properly excluded as a nonmarital debt. The loan identified in I3 was taken out on September 20, 2017, long after the couple had separated and there was any marital income. This loan was a renewal of note 35899 which was, itself, a renewal of note 35790. Note 35790 was identified as "Hay and 2017 Operating Expenses."

I2 was the operating loan for the farm and covered costs from 2015 through 2017. As such, some of the loan was from a time when they were married and sharing the profits of the farm as marital income. As the loan was being used to the joint benefit of the parties and was initiated during the marriage, at least part of I2 should be considered marital debt. See *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Further, the assets of the farming operation, other than those inherited by Michael from his mother, were included in the marital estate. It is clearly inequitable to include the assets of the farming operation but not the debt which was used to produce and maintain those assets. Nancy argues that this debt should not be considered marital as the debt was taken out to farm the newly inherited property. Michael argues that the note was the continuing operating expenses of the farm which was rolled over from previous years and not taken out specifically to farm the new land. Regardless of how the loan came to be, it was used for the farming operation which generated marital income and any debts associated with the production of marital income are marital debts. In addition, it does not matter if the land being farmed was marital or nonmarital property; nonmarital assets may produce marital income and the debt associated with the production of that income is properly treated as marital debt. See *Sughroue v. Sughroue*, 19 Neb. App. 912, 815 N.W.2d 210 (2012). Thus, that portion of I2 which was used for the production of marital income is to be treated as a marital debt.

I4 was used for the liability on their 2016 joint tax return. The income for that year was unusually high as Michael had deferred some farm income from 2015. As a general principle, income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, income tax liability generally should be treated as a marital debt, for purposes of determining equitable distribution in a divorce action. *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). The loan for the income tax liability was used for the benefit of the marriage, at least in part, for income derived prior to the separation. However, Nancy asserts in her brief that the income from the sale of that crop in 2016 was not included in the joint property settlement as it was used to pay off loans for the farming operation. In effect, the income was included in the property settlement as it reduced the farm debt which, as we determined above, should be included in the marital estate. Based on the facts, it appears that some equitable adjustment would be

necessary to account for these issues. See *Westwood v. Darnell*, 299 Neb. 612, 909 N.W.2d 645 (2018).

As we have determined that at least some of the debts were marital, we must determine how to value those debts. It is undisputed that each of these debts were acquired prior to trial. However, each party suggests valuing the debts at various times prior to the trial. As a general principle, the date upon which a marital estate is valued should be rationally related to the property composing the marital estate. *Stanosheck v. Jeanette*, 294 Neb. 138, 881 N.W.2d 599 (2016). A trial court is not required to use only one valuation date for marital assets and marital debts in equitably dividing a marital estate. *Rohde v. Rohde*, 303 Neb. 85, 927 N.W.2d 37 (2019). The purpose of assigning a date of valuation of a marital estate in a decree is to ensure that the marital estate is equitably divided. *Id.* The choice of a date as of which marital assets available for equitable distribution should be identified and valued must be dictated largely by pragmatic considerations. *Id.* A trial court's determination of the date for valuation is reviewed for an abuse of discretion. *Id.*

Valuing farm debt and property is an inherently difficult task as debt is often accrued for planting crops and caring for animals long before the proceeds from those efforts are received. Such is the case here, where income from a previous year was included in the next year, where debt was taken out to pay for crops which were growing over the course of the dissolution, and profits for those crops received even later.

First, with regard to I2, we find it most appropriate to value this loan as of the date of separation, April 2016. The loan account shows the various deposits coming throughout early 2016, reflecting the sales of the 2015 crops which paid down the operating loan. While there were several advances during this time, the majority of advances from the loan occurred after April 14, 2016. Thus, the value of the loan on this date in the amount of $182,262.69 takes into account both the income from the prior farming season and the expenses from the new season.

With regard to the second loan at issue, I4, which was obtained for the purpose of paying the 2016 joint tax liability, we find that taking the value at the time it was obtained in 2017 is appropriate. We must also determine what proportion of the tax debt is attributable to the marriage. In this case, we find that the tax liability in full is attributable to the marriage. First, it is undisputed that the income received earlier in 2016 was properly attributed to the marriage as it came from crops which were harvested while the parties were still married. In addition, Michael continued to pay for various expenses of Nancy which were considered temporary alimony by the court. As noted during oral argument, were such payments considered alimony, they would have created an income tax liability for Nancy. As such, both parties benefited from the income obtained that year and the full amount of the loan to pay that income tax liability should be treated as marital property.

The final step in separating the marital estate is to determine the division of the marital property. In this case, each of the marital debts now included in the marital estate should be assigned to Michael. I2 is the operating loan of the farm, and as Michael is receiving all of the farm property as part of his division of property, the debt is properly assigned to him. I4 is the loan for the income tax liability. As Michael took out the loan and is the sole signer on the account we assign the debt to him.

Based on these determinations, we modify the decree as follows: (1) the value of the loan listed in I2 is to be set at $182,262.69 and is to be included in the marital estate and assigned to Michael, (2) the value of the loan listed in I4 is to be set at $124,974.52 and is to be included in the marital estate and assigned to Michael, and (3) the division of marital property and debt shall be recalculated accordingly. This increases Michael's total debt from $216,735.53 to $523,972.74, adjusting the net award to Michael from $561,531.03 to $254,293.82. Nancy's net award remains unchanged at $45,053.21. Thus, the total marital estate is reduced from $606,584.24 to $299,347.03. One-half to each party is reduced from $303,292.12 to $149,673.51. Thus, Michael owes Nancy the sum of $104,620.30 payable under the same terms as listed in the decree, except the first payment is due on December 1, 2019.

*Award of Temporary and Permanent Alimony.*

Michael argues that the court's award of temporary and permanent alimony was inappropriate. The court determined that the money paid by Michael for the credit card expenditures and other expenses of Nancy should be treated as temporary alimony and the property she purchased with the credit card treated as separate property.

After the filing of the action, Nancy found new employment in Lincoln and moved out of the marital home in April 2016. While she brought with her some personal items, Nancy largely furnished the new apartment with purchases that were charged to the joint credit card. In addition, Nancy charged items such as eating out and travel to the credit card. Nancy did not pay any money toward that credit card until January or February 2017. Rather, Michael paid the credit card balance as well as the cost of Nancy's cellphone and student loans.

With regard to the treatment of the credit card expenditures as temporary alimony, Michael argues that it was inappropriate for the court to treat these expenditures as temporary alimony because there was no request pursuant to Neb. Rev. Stat. § 42-357 (Reissue 2016). However, Michael agreed during oral argument that if he was given credit for the debt that was incurred as part of operating the farm expenses, it would not be appropriate to seek credit for these payments. As we have determined that the two items of debt were improperly excluded from the marital estate, and have issued directions for their inclusion in the marital estate, we no longer need to address this issue per Michael's concession made at oral argument.

With regard to permanent alimony, Michael argues the court abused its discretion in ordering payments of $800 for 120 months. In considering alimony upon a dissolution of marriage, a court should consider (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. § 42-365. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Paulsen v. Paulsen*, 11 Neb. App. 362, 650 N.W.2d 497 (2002). Furthermore, an appellate court is not inclined to disturb the trial court's award of alimony unless it is patently unfair on the record. *Id.*

The court specifically focused on the facts that the parties had been married for 34 years, that there is a significant discrepancy in the income of the parties favoring Michael, and because Nancy contributed some amounts of separate property to the marital estate. Considering those same circumstances, and our standard of review, we determine that the award of alimony by the district court was not an abuse of discretion.

## CONCLUSION

In conclusion, we find that the district did not err in its valuations and inclusions of various property or in its award of permanent alimony, and we affirm its order in these respects. In addition, we find that the district court did err in excluding two loans which were obtained for the benefit of the marriage, and thus, we affirm and modify the decree as set out in this opinion.

AFFIRMED AS MODIFIED.