Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:11 PM CDT

Judith J. Weston, appellee, v.
Benjamin K. Weston, appellant.
___ N.W.3d ___

Filed April 23, 2024.    No. A-23-283.

1. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Divorce: Property Division.** The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. This is the polestar guiding an appellate court's analysis of the issues.

4. ____: ____. Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.

5. ____: ____. When classifying property as either marital or nonmarital, generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance.

6. **Divorce: Property Division: Proof.** The burden of proof to show that property is nonmarital remains with the person making the claim.

7. **Divorce: Property Division.** The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage.

8. **Joint Tenancy: Parol Evidence.** When real estate is conveyed in joint tenancy, any parol evidence to overcome the recorded legal title must be clear, unequivocal, and convincing.

9. **Evidence: Appeal and Error.** When credible evidence is in conflict on material issues of fact, an appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another.

10. **Evidence: Proof.** Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence.

11. **Trial: Witnesses: Appeal and Error.** The credibility and weight of witness testimony are for the fact finder to determine, and witness credibility is not to be reassessed on appellate review.

12. **Trial: Evidence.** Evidence not directly contradicted is not necessarily binding on the triers of fact and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence.

13. **Divorce: Property Division: Proof: Testimony.** A nonmarital interest in property may be established by credible testimony.

14. **Property Division.** With some exceptions, the marital estate does not include property acquired by one of the parties through gift or inheritance. And there is no exception where an otherwise nonmarital monetary gift is spent on a family expense.

15. ____. Commingling of marital and nonmarital assets does not occur when separate property remains segregated or is traceable into its product.

16. **Evidence: Proof.** There is no hierarchy of evidence. There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits. A trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. In doing so, a trial court may choose what evidence merits greater weight.

17. **Divorce: Property Division.** Compensation for an injury that a spouse has or will receive for pain, suffering, disfigurement, disability, or loss of postdivorce earning capacity should not equitably be included in the marital estate.

18. **Property Division.** Compensation for past wages, medical expenses, and other items that compensate for the diminution of the marital estate

should equitably be included in the marital estate as they properly replace losses of property created by the marital partnership.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed in part, and in part reversed and remanded with directions.

Claude E. Berreckman, Jr., of Berreckman & Bazata, P.C., L.L.O., for appellant.

Brennon D. Malcom, of Malcom, Nelsen & Windrum, L.L.C., for appellee.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

PIRTLE, Chief Judge.

## I. INTRODUCTION

The district court for Dawson County dissolved the marriage of Benjamin K. Weston and Judith J. Weston and divided the parties' property and debts. On appeal, Benjamin challenges the district court's classification and division of property. For the reasons that follow, we affirm in part, and in part reverse and remand with directions.

## II. BACKGROUND

Benjamin's appeal takes issue only with the district court's order regarding the classification of certain assets as marital or nonmarital property. Therefore, our recitation of facts encompasses only the facts relevant to those issues.

Benjamin and Judith were married on June 20, 2008. Judith brought two children into the marriage whom Benjamin eventually adopted. Benjamin and Judith then had two children together.

During their marriage, the family lived on rural property in Lexington, Nebraska, that Benjamin had lived on since 1987. Benjamin's parents owned the property for most of the time he lived there. However, on November 8, 2012, Benjamin's parents conveyed the property by warranty deed to Benjamin and Judith as joint tenants. No money was exchanged for

the conveyance of the property; instead, the warranty deed states that the conveyance was made "in consideration of Love and Affection."

In 2015, Benjamin was involved in a semi-truck accident that left him partially disabled and unable to work. Without Benjamin's income, the family struggled financially. Although Benjamin was pursuing a workers' compensation claim, it took several years for the claim to come to fruition. Due to their financial difficulties at this time, Judith's mother assisted Benjamin and Judith by paying some of their expenses.

On January 24, 2019, Benjamin received a lump-sum workers' compensation settlement of $135,811.01. Shortly after receiving the settlement, Benjamin and Judith used $34,000 of the money to pay off a loan on their 2018 Jeep Renegade. Additionally, in the summer of 2020, with their then-current residence in a near dilapidated state, Benjamin and Judith used $60,000 of the settlement money to renovate an old agricultural building on their property into a new residence. As the renovation exceeded their $60,000 budget, Judith's mother helped them by contributing $123,947.79 to the project. The renovation was completed in the spring of 2021.

In July 2021, Benjamin and Judith separated after one of Benjamin's adopted children accused him of sexually assaulting her 6 years earlier. On August 10, Judith filed an action for a dissolution of marriage. A trial was held over the course of 2 days in October and November 2022.

## 1. TRIAL

Relevant to this appeal, the trial involved the testimony of Helen Rempel (Helen), Loretta Weston, Judith, and Benjamin. Helen is Judith's mother and Loretta is Benjamin's mother.

### (a) Conveyance of Property
### to Benjamin and Judith

One of the issues on appeal is whether the real estate conveyed to Benjamin and Judith by Benjamin's parents was a marital asset.

Benjamin testified that the real estate was a gift to him from his parents. He claimed that prior to his parents' conveying the real estate to him and Judith on November 8, 2012, they conveyed it to him individually. He stated they only added Judith's name to the deed because both their names had to be on it for Benjamin to receive a grant to build a greenhouse on the property. He went on to indicate that Judith knew the gift was intended solely for him and that she knew she was only included in the deed so they could receive the grant.

Loretta corroborated Benjamin's version of events. She stated that she and her husband did not plan to give Benjamin the property until their death, but he needed ownership to get a grant to build a greenhouse. She stated that they initially conveyed the property only to Benjamin, but later added Judith's name because it was required to receive the grant. Loretta claimed to still have the documents that conveyed the property to Benjamin individually but was not able to produce them. She then indicated that her and her husband's intent was to deed the property "for the benefit of [Benjamin]."

Judith contested Benjamin's and Loretta's assertions. She explained that Benjamin's parents gave the land to both her and Benjamin because they knew she was a good person and spouse. Judith also took issue with Benjamin and Loretta's timelines. She stated that there were no discussions regarding the grant until a year after the property was already conveyed in both their names. Notably, the record is unclear if Benjamin and Judith ever applied for the grant, but it does reflect that the greenhouse was never built.

The district court found that the evidence presented by Benjamin and his mother did not clearly and unequivocally overcome the presumption that the real estate was marital property. In its findings, the court stated:

> The evidence established the transfer of the real estate . . . was part of a pattern of assistance Benjamin's parents provided to the couple. Such assistance was provided to both Benjamin and Judith and was part of

Benjamin's parents' expressed intention to help the couple maintain and further their marriage and to help the couple support and care for their children. The evidence established the transfer of the property was a gift to both Benjamin and Judith.

Accordingly, the court found that the entire value of the property was included in the marital estate.

### (b) Helen's Contributions to Renovation

An issue in this appeal is whether Helen's $123,947.79 contribution to the renovation was a gift to Judith, as an advance of her inheritance, or a gift given for the joint benefit of the marriage.

After Benjamin's accident, Benjamin and Judith decided the family needed a new place to live because the house they occupied was decaying. Because Benjamin and Judith were unable to afford the costs of renovating the agricultural building on their property, Helen provided them with financial assistance. Helen testified that she tracked the amount she contributed to the renovation on a weekly basis and calculated the total to be $123,947.79 after the work was completed.

Helen and Judith testified that prior to Helen's providing the financial assistance, there was an understanding between her, Judith, and Benjamin that the amount Helen was paying to help renovate the building was an advance on Judith's inheritance. Helen explained that she discussed the issue with her other children and made it clear to Judith that whatever amount she contributed to the project "would be taken out of whatever [Judith] received" when Helen and her husband died. Judith's testimony similarly stated there was an agreement that the amount Helen contributed to the renovation "was going to be taken away [from the] inheritance money that [she] was to receive once [her] parents were both gone."

Helen also described prior occasions where she and her husband assisted Benjamin and Judith financially. Helen explained that following the marriage in 2008, she helped

them with large, unexpected expenditures. More so, Helen stated that after Benjamin's accident, she and her husband assisted them financially on a regular basis. This assistance involved helping with vehicle payments, taxes, licensing a vehicle, and other miscellaneous costs.

In contrast, Benjamin asserted that Helen and her husband told him and Judith that their contributions to the renovation were gifts to their entire family. He testified that Helen "said it was a gift to us and the kids because we couldn't live in that little house any further."

The district court found that the $123,947.79 Helen contributed to the renovation project was not marital property. The court described the money as "Judith's inheritance advance" and stated that because the full amount was traceable to the remodeling project, Judith was entitled to a credit for her contributions to the property's value in the full amount of $123,947.79.

(c) Purchase of 2018 Jeep Renegade

An issue in this appeal is whether Benjamin was entitled to credit for the value of the 2018 Jeep Renegade because he purchased it with money from his workers' compensation settlement.

Benjamin testified that while his workers' compensation claim was pending, he wanted to buy Judith a new vehicle because she never had one. Judith stated that Benjamin told her she deserved a new vehicle and that he wanted to buy one for her. Benjamin's account did not differentiate from this sentiment. He testified that buying the new vehicle was "[o]ne hundred percent" his idea and that he desired to purchase the 2018 Jeep Renegade because Judith wanted it. Although they initially financed the purchase, once Benjamin received his settlement, they paid off the loan. Accounting for licensing and registration costs, they spent $34,000 of the settlement money on the vehicle. The only evidence presented at trial regarding the vehicle's then-current value was that it was worth $20,000.

The district court found that the money spent to purchase the 2018 Jeep Renegade was traceable to Benjamin's workers' compensation settlement, a nonmarital asset. However, the court concluded that the vehicle was marital property because it was "acquired during the marriage for the joint benefit of the parties using Benjamin's non-marital funds." In a later order on Benjamin's motion for a new trial, the court further clarified its ruling as it pertained to the 2018 Jeep Renegade: "While Benjamin was able to trace $34,000 of his workers['] compensation settlement to the purchase of the 2018 Jeep, the evidence established that at the time the Jeep was purchased Benjamin clearly and unequivocally intended it as and made it a gift to Judith." As such, the court found that Benjamin was not entitled to credit for the Jeep's $20,000 value from the marital estate.

## 2. Motion for New Trial

On December 1, 2022, Benjamin motioned for a new trial, citing several purported errors made by the district court. On March 13, 2023, the district court issued an order that overruled portions of its prior order as an order nunc pro tunc. In this order, the district court essentially provided further reasoning on several issues and corrected erroneous values for the credits given to Judith as a result of Helen's gift to her. In all other respects, the district court overruled the motion for new trial and affirmed its prior order.

## III. ASSIGNMENTS OF ERROR

Benjamin assigns, restated and reordered, that the district court erred by (1) failing to treat the gift of real estate by his parents as a nonmarital transfer, (2) finding that Helen's contributions to the renovation were gifts solely made to Judith, (3) determining Helen's contributions to the renovation amounted to $123,947.79, and (4) failing to provide Benjamin with a credit for the value of the 2018 Jeep Renegade.

## IV. STANDARD OF REVIEW

[1,2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Novotny v. Novotny*, 32 Neb. App. 142, 995 N.W.2d 64 (2023). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.* A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

## V. ANALYSIS

[3] The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Rohde v. Rohde*, 303 Neb. 85, 927 N.W.2d 37 (2019). This is the polestar guiding our analysis of the issues. *Id.*

[4] Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. *Rohde v. Rohde, supra.* The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. *Id.* The second step is to value the marital assets and marital liabilities of the parties. *Id.* The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Rohde v. Rohde, supra.*

[5,6] When classifying property as either marital or nonmarital, generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. See *id.* Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id.* The burden of proof to show that property is nonmarital remains with the person making the claim. *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012).

## 1. Real Estate Conveyed
### by Benjamin's Parents

Benjamin first assigns the district court abused its discretion by classifying the real estate conveyed by his parents as marital property. Although the property was deeded to both Benjamin and Judith as joint tenants, Benjamin asserts the real estate was gifted only to him.

[7,8] We determine that Benjamin fails to meet his burden to show the real estate was nonmarital property. The manner in which property is titled or transferred by the parties during the marriage does not restrict the trial court's determination of how the property will be divided in an action for dissolution of marriage. See *Sellers v. Sellers*, 294 Neb. 346, 882 N.W.2d 705 (2016). When real estate is conveyed in joint tenancy, any parol evidence to overcome the recorded legal title must be clear, unequivocal, and convincing. See *Salmon v. Salmon*, 219 Neb. 899, 367 N.W.2d 142 (1985).

In *Salmon v. Salmon, supra*, a mother deeded property to her daughter and son-in-law in exchange for $10,000. The mother essentially provided a private mortgage to her daughter and son-in-law where they would pay off the balance over a 10-year period. *Id.* Later in their divorce proceedings, the daughter claimed the property was a gift from her mother to her. The only evidence the daughter presented to counter the recitals in the deed was her mother's testimony. *Id.* The Nebraska Supreme Court found that in the absence of any other evidence, the mother's testimony "was not so clear, unequivocal, and convincing as to overcome the recitals in the deed which conveyed the property to the parties as joint tenants." *Id.* at 901, 367 N.W.2d at 144.

Benjamin asserts this matter is distinguishable from *Salmon* because there was no exchange of money for the property. In terms of classifying whether property is marital, we do not see why property that was jointly conveyed to a married couple should be treated differently based on whether it was given in exchange for value or at no cost at all. The only

difference in analyzing those situations would be the calculation of the value of the gift, whether it was for the full value of the property or just a portion. That does not change the initial inquiry of deciding for whose benefit the gift was originally intended. For that reason, we conclude that the "clear, unequivocal, and convincing" standard from *Salmon* applies to this matter. See 219 Neb. at 901, 367 N.W.2d at 144.

[9] We determine the evidence presented by Benjamin was not clear, unequivocal, and convincing to the extent that it overcame the recitals in the deed that the property was jointly gifted to both him and Judith. The only evidence presented by Benjamin to overcome the requisite presumption was his and his mother's testimony that was countered by Judith's testimony. While this is slightly more evidence than the evidence presented in *Salmon*, we do not believe it rises to the clear, unequivocal, and convincing standard. This is particularly true when we give weight to the district court's decision to accept Judith's version of the facts over Benjamin's and his mother's. See *Malousek v. Meyer*, 309 Neb. 803, 962 N.W.2d 676 (2021) (when credible evidence is in conflict on material issues of fact, appellate court will consider and may give weight to fact that trial court observed witnesses and accepted one version of facts over another). Accordingly, we conclude the district court did not abuse its discretion in determining the conveyance of real estate by Benjamin's parents was a gift to both Benjamin and Judith and, therefore, was marital property.

## 2. Helen's Contributions
### to Renovation

Benjamin next assigns the district court abused its discretion by finding that Helen's contributions to the renovation project were solely gifts to Judith. Benjamin argues that Helen contributed to the renovation with the intent to benefit their whole family, including himself. He continues to assert that Helen's intent did not change until July 2021, after Benjamin was accused of sexually assaulting his daughter. He

then generally argues that Judith's documentary evidence was all produced after Helen had already made the payments and after her intent had changed.

We begin by addressing apparent confusion regarding the requisite burden of proof on this issue. In their briefs, both parties cite the "clear, unequivocal[,] and convincing" standard used in the prior section for the transfer of the real estate by Benjamin's parents. Brief for appellant at 15; brief for appellee at 11. The district court also referenced this standard in its order on Benjamin's motion for new trial. In that order, the court stated: "The evidence from Judith's mother was clear, unequivocal, and convincing that she gave Judith money for the construction and remodeling of Benjamin and Judith's home as gifts intended as an offset or advance upon the inheritance she intended to make to Judith upon her death." The reliance on this standard for the ordinary classification of property as marital or nonmarital is incorrect.

[10] Unless an exception applies, the burden of proof in civil cases requires only the greater weight of the evidence. *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019) (applying this burden to dissolution of marriage case where division of property was at issue). Accordingly, the correct burden of proof in classifying the parties' property as marital or nonmarital requires only the greater weight of the evidence. The prior section concerning the conveyance of real estate by Benjamin's parents utilized the "clear, unequivocal, and convincing" burden of proof because it fell under an exception used by the Supreme Court in *Salmon v. Salmon*, 219 Neb. 899, 901, 367 N.W.2d 142, 144 (1985). Because there is no similar exception raised for the classification of assets relevant to this assignment, the burden of proof is the same as any other civil matter. Accordingly, Judith, as the party making the claim that the property is nonmarital, only needs to prove the contributions from her mother were gifts to her by the greater weight of the evidence. See, *id.*; *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012).

[11,12] Imperative to our analysis is the district court's determination on credibility. The credibility and weight of witness testimony are for the fact finder to determine, and witness credibility is not to be reassessed on appellate review. See *State v. Davis*, 310 Neb. 865, 969 N.W.2d 861 (2022). In its order on Benjamin's motion for new trial, the district court dismissed Benjamin's evidence as not credible:

> Benjamin offered no credible or convincing evidence to show the transfer of money from Judith's mother to Judith for the purchase of construction materials and services was intended to be a gift to him as well as Judith. Benjamin offered no convincing evidence to negate the testimony of Judith's mother that the money she gave to Judith was intended as an offset to the money Judith would otherwise receive upon the death of Judith's mother. All the payments by Judith's mother were traced to the home remodeling project and Benjamin's evidence did not negate or undermine the tracing of the gifted funds.

Although we do not reassess the district court's findings as to credibility on appeal, the court's ruling that Benjamin's evidence was not credible does not automatically mean that Judith carried her burden of proof. Evidence not directly contradicted is not necessarily binding on the triers of fact and may be given no weight where it is inherently improbable, unreasonable, self-contradictory, or inconsistent with facts or circumstances in evidence. *Burgardt v. Burgardt, supra*. Therefore, we must still analyze whether Judith presented sufficient evidence to meet her burden.

[13] We find that Judith met her burden to demonstrate that Helen's contributions were gifts to her. A nonmarital interest in property may be established by credible testimony. *Id.* Judith presented evidence in the form of testimony and documents. Helen and Judith both testified that there was a mutual understanding between Helen, her husband, Judith, Benjamin, and Helen's other children that any amount given to Judith

was an advance on her inheritance. Helen explained that she kept track of weekly expenses to account for necessary deductions from Judith's inheritance and submitted a list of these expenses into evidence. We conclude this is sufficient to prove by the greater weight of the evidence that Helen's contributions to the renovation were gifts to Judith.

[14] We next determine that the gifts maintained their status as gifts although they were spent on the renovation that benefited both Benjamin and Judith. In *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018), the Supreme Court found that a gift by the wife's father used to pay off the mortgage on the marital home did not change the gift to marital property. In its reasoning, the court stated:

> With some exceptions, the marital estate does not include property acquired by one of the parties through gift or inheritance. And there is no exception where an otherwise nonmarital monetary gift is spent on a family expense. Therefore, the referee's finding that the portion of the gift spent on the mortgage payoff lost its gift status because it was applied to a marital expense was contrary to the law and against the weight of the evidence.

*Id.* at 220, 908 N.W.2d at 26. Accordingly, Helen's gifts to Judith did not lose their nonmarital status because they were spent on a renovation that benefited the entire family, including Benjamin.

We conclude the district court did not abuse its discretion in finding that Helen's contributions to the renovation were nonmarital property.

### 3. VALUE OF HELEN'S CONTRIBUTIONS TO RENOVATION

Benjamin next assigns the district court abused its discretion in valuing the amount of Helen's gifts to Judith at $123,947.79. Benjamin essentially argues the evidence used to arrive at this figure is inconsistent with other evidence and includes expenses not attributed to the renovation. His brief

proceeds to dissect and compare the invoices in the record with Helen's handwritten list of expenditures that provided the $123,947.79 figure.

[15] We begin by noting that even if some of the expenditures included in the $123,947.79 figure were not spent on the renovation, they were still gifts to Judith. See *Becher v. Becher, supra*. But Judith cannot receive credit for the gifts that were not spent on the renovation because those expenses are not traceable into their product. See *Marshall v. Marshall*, 298 Neb. 1, 902 N.W.2d 223 (2017) (finding that commingling of marital and nonmarital assets does not occur when separate property remains segregated or is traceable into its product). Helen testified that she tracked the amount of money she gave Judith on a weekly basis, so Helen knew how much to deduct from Judith's inheritance. Helen stated that she used these tracked expenditures to create her handwritten list of expenses once the renovation was complete. The handwritten list of expenses was the list that the court received as evidence and used to calculate its total of $123,947.79.

[16] In relying solely on Helen's handwritten list to come up with the $123,947.79 figure, the district court appears to have disregarded certain parts of the parties' testimony and the invoices submitted to support the expenditures. As the Supreme Court has stated, "there is no hierarchy of evidence." *Burgardt v. Burgardt*, 304 Neb. 356, 362, 934 N.W.2d 488, 494 (2019). There is no general rule of evidence that a party must produce the best evidence which the nature of the case permits. *Id.* A trial court weighs the credibility of the witnesses and the evidence and determines what evidence should be given the greater weight in arriving at a factual determination on the merits. *Id.* In doing so, a trial court may choose what evidence merits greater weight. See *id.*

However, several of these tracked expenses did not directly pertain to the renovation. Looking at Helen's list in conjunction with the corresponding invoices, Helen spent $892.59 to pay Benjamin and Judith's propane bills, $781.76 to pay

their electric bills, and $1,868.69 to pay their homeowners insurance. In total, this amounts to $3,543.04 that was not spent on the renovation but was credited to Judith by the district court. Because these expenses are not traceable into their product, whereas the expenses for the renovation are traceable into the improved value of the real estate, Judith should not have been granted credit for them.

We conclude the district court did not abuse its discretion in relying on Helen's handwritten list to account for the amount she gifted Judith for the renovation, but it did abuse its discretion by including in that amount expenses that were not traceable to the improvements on the property. Therefore, the district court awarded Judith an excessive credit in the amount of $3,543.04. As the money from the sale of the parties' home is currently held in trust by the court, we direct the district court to deduct the amount of Judith's credit held in trust by $3,543.04, thereby increasing Benjamin's share by the same amount.

## 4. CREDIT FOR 2018 JEEP RENEGADE

Benjamin next assigns the district court abused its discretion by not granting him a $20,000 credit for the value of the 2018 Jeep Renegade he purchased with funds from his workers' compensation settlement.

[17,18] The parties do not contest that the $34,000 used to purchase the vehicle came from Benjamin's workers' compensation settlement. They also do not contest that these funds were nonmarital property. However, for the sake of completeness, we first determine that the district court correctly found that the workers' compensation settlement was Benjamin's nonmarital property. In *Parde v. Parde*, 258 Neb. 101, 602 N.W.2d 657 (1999), the Supreme Court held that proceeds from personal injury awards can be marital or nonmarital assets depending on what damages the settlement was intended to compensate. In that case, the court held:

[C]ompensation for an injury that a spouse has or will receive for pain, suffering, disfigurement, disability, or loss of postdivorce earning capacity should not equitably be included in the marital estate. On the other hand, compensation for past wages, medical expenses, and other items that compensate for the diminution of the marital estate should equitably be included in the marital estate as they properly replace losses of property created by the marital partnership.

*Id*. at 109-10, 602 N.W.2d at 663. Benjamin's workers' compensation settlement falls within the category that should not equitably be included in the marital estate. As such, the settlement was Benjamin's nonmarital property.

We now address whether the district court should have granted Benjamin a $20,000 credit for the purchase of the 2018 Jeep Renegade. Benjamin contends he should receive the credit because the funds used to purchase the vehicle were traceable to his workers' compensation settlement. In contrast, Judith argues that the funds used to purchase the vehicle became marital property when Benjamin gifted her the vehicle.

We conclude that the district court did not abuse its discretion in refusing to give Benjamin the $20,000 credit. Benjamin's and Judith's uncontradicted testimony indicates that it was Benjamin's idea to purchase the vehicle and that he wanted to purchase it for Judith. The district court found that although the funds were traceable to Benjamin's workers' compensation settlement, there was no evidence that Benjamin intended to maintain the separate character of the settlement proceeds. Put differently, the district court essentially found that Benjamin failed to meet his burden of proof to show those funds were not marital property. The burden of proof to show that property is nonmarital remains with the person making the claim. *Plog v. Plog*, 20 Neb. App. 383, 824 N.W.2d 749 (2012). As there was no evidence adduced to contradict Benjamin's and Judith's testimony that the vehicle

was bought for Judith or to affirmatively show the vehicle's value was not marital property, we do not believe the district court's conclusion was clearly untenable or unreasonable. Accordingly, we determine the district court did not abuse its discretion in not granting Benjamin a credit for the value of the 2018 Jeep Renegade.

## VI. CONCLUSION

We conclude the district court did not abuse its discretion in finding that the real estate conveyed to Benjamin and Judith by Benjamin's parents was marital property and that Benjamin was not entitled to a credit for the value of the 2018 Jeep Renegade. However, we determine the district court abused its discretion in awarding Judith credit for the $3,543.04 that Helen spent to pay expenses unrelated to the renovation. Accordingly, we reverse the district court's decision with directions to deduct the amount of Judith's credit held in trust by $3,543.04, thereby increasing Benjamin's share by the same amount.

Affirmed in part, and in part reversed
and remanded with directions.